GREENE v. GREENE.

1. Divorce—Property Settlement—Modification of Decree—Exceptions.

Decretal provisions for adjustment of property rights in a suit for divorce cannot be set aside, modified or altered in the absence of a showing of fraud, necessity for clarification or ambiguity, except that a court of equity normally possesses inherent authority to enforce its own directives.

2. Equity—Enforcement of Decrees—Discretion of Court.

The inherent authority of a court of equity to enforce its own directives, such as property settlement provisions of decrees for divorce, includes the exercise of some discretion in interpreting them, since the court necessarily reserves some latitude to construe the basic intent and purpose of the decreed directive.

3. Divorce—Property Settlement—Discretion of Court.

The property settlement provisions of a decree of divorce are a part of the trial court's own decree, presumably reached by

References for Points in Headnotes
[1] 17A Am Jur, Divorce and Separation § 937.
[2] 19 Am Jur, Equity § 188.
[3, 6] 17A Am Jur, Divorce and Separation § 931.
[4] 17A Am Jur, Divorce and Separation § 938.
[7] 17 Am Jur, Divorce and Separation § 645.

him only after profound deliberation and in the exercise of his traditional broad discretion, hence, when enforcement thereof is later sought, he has an equally broad discretion in interpreting and determining what it was and why he had originally so decreed.

4. SAME — PROPERTY SETTLEMENT — MATERIAL AND SUBSTANTIAL BREACH.

Relief for breach of plain and· unambiguous property settlement provision of decree of divorce may only be granted where it is found that there has been a default or breach thereof and that such a breach was ·material and substantial.

5. EQUITY—SUPPLEMENTAL ORDER TO END LITIGATION.

A trial court may enter an appropriate supplemental order in an equity case, implementing his former order, so as to resolve the controversy and conclude the litigation, whether or not he is requested to do so by the litigants.

6. DIVORCE—PROPERTY SETTLEMENT—DISCRETION OF COURT.

Denial of relief to plaintiff wife on her petition for enforcement of property settlement provisions of divorce decree wherein she was to obtain interest as tenant in common upon defendant husband's default in paying off $8,000 in monthly instalments of $400 each *held*, within discretion of trial court, where husband had made prompt payment of $7,200, admittedly defaulted a few days on remaining $800 but did pay it into court, the default not having been substantial.

7. SAME—COSTS.

No costs are allowed on wife's appeal from denial of relief to her on petition to enforce property settlement provisions of decree of divorce, where admitted breach was not of a substantial nature.

Appeal from Muskegon; Fox (Noel P.), J. Submitted April 14, 1959. (Docket No. 45, Calendar No. 47,989.) Decided October 12, 1959.

Bill by Golden Greene and cross bill by Henry P. Greene resulted in decree of divorce to plaintiff with negotiated property settlement. Each party, with plaintiff claiming a breach of terms thereof and defendant claiming compliance, petitioned court for enforcement of decree. Order entered dismissing

plaintiff's petition and determining ownership of property in defendant. Plaintiff appeals. Affirmed.

*Alexis J. Rogoski* and *Robert Bunker Rogoski,* for plaintiff.

*Charles M. Waugh* (*Fredric A. Grimm,* of counsel), for defendant.

VOELKER, J. In 1955 plaintiff-appellant, Golden Greene, filed a bill for separate maintenance. Contest developed and by stipulation of the parties the husband's cross bill for absolute divorce was dismissed and the wife's bill amended to pray for absolute divorce. On January 18, 1957, the divorce was granted. The property settlement provisions of the decree among other things awarded to the defendant former husband certain properties then being purchased by them under land contract, upon condition that he pay his wife $8,000 for her just share in the property, the payments to be made to her through the friend of the court in consecutive monthly instalments of $400. This portion of the decree then went on to provide as follows:

"It is further ordered, adjudged and decreed, that, in the event the said defendant shall be in default of any of the aforesaid payments for more than 7 days, the then remaining unpaid balance shall bear interest at the rate of 6 per cent per annum until fully paid and it is further ordered, that in the event the said defendant shall make default in any of the aforesaid payments for more than 30 days, the provision awarding said properties to the defendant shall be null and void and the title to said property shall vest in the parties hereto as tenants in common and the rentals therefrom divided accordingly; and, it is further ordered that the said defendant shall, from the date of this decree, receive and retain as his own

all rental money obtained from the use and occupancy of any part of the aforesaid properties during the period in which said monetary payments are made by the defendant to the plaintiff under the provisions of this decree; and it is also further ordered that, upon the completion of the payment of said sums, by the defendant to the plaintiff, the said Golden Greene shall thereupon forthwith execute a quit-claim deed conveying to the said Henry P. Greene all of her right, title and interest in and to the aforesaid properties, and that, in default thereof, a copy of this decree may be recorded in the office of the register of deeds for the county of Muskegon, Michigan, and shall act in and of itself as a complete conveyance from the said Golden Greene to the said Henry P. Greene."

The decree when entered bore the written approval of the attorneys for both parties and no appeal was taken. The time for any rehearing has also expired, and the original decree remains in full force and effect.

Defendant-appellee, Henry P. Greene, paid the monthly instalments without default, up until the next to the last instalment, whereupon he defaulted. The reason for his default does not appear. He later paid the last 2 instalments of $800 to the friend of the court, who tendered them to the plaintiff. The plaintiff refused to accept the belated tender of payment and instead petitioned the circuit court for enforcement of the provisions of the decree, among other things praying:

"That the court enter an order herein adjudging, declaring and confirming plaintiff's right, title and interest to and in the above-described parcels of land as a tenant in common, and to the rentals therefrom, determining her obligation for the payment of any part of the purchase price of either of such parcels remaining unpaid. for the payment of taxes, insurance premiums, and the cost of the mainte-

nance thereof, requiring defendant to recognize her rights therein, and granting to plaintiff such other and further relief as the exigencies of the case may require, and as shall be agreeable to equity and good conscience."

On August 27, 1958, defendant filed a cross petition praying:

"That the court enter an order herein directing the plaintiff to accept payment of the $800 on deposit for her with the friend of the court and direct the plaintiff to execute a quitclaim deed conveying to the defendant all of her right, title and interest in and to the aforesaid properties."

On September 8, 1958, the matter was heard on the foregoing petition and cross petition, following which the chancellor entered an order denying plaintiff's petition and granting the prayer of defendant's cross petition, saying in his opinion:

"*The Court:* Well, I'm inclined to try to be equitable again. I probably might be reversed, but it seems to me as though when you pay in $7,200, on a property settlement agreement the amount of which is $8,000, and there is not a substantial forfeiture, but a forfeiture over a very short period of time— it would have to be, because here we are in September, and the petition is before us, and all the money is in the friend of the court's office. I elect to follow the course of equity and to disregard the strict letter of the agreement. I deny the petition. I'm well aware of all the opinions cited by counsel for the plaintiff, I have read all of them previously in other cases, but my conscience tells me that I must again decide on the side of equity. I think it would be inequitable and unconscionable to hold otherwise, and in a situation of this kind my conscience comes first in controlling my decision, and that's my decision."

It is unfortunately not clear from the record before us just how late the defendant was with his belated payment. Apparently, however, it was but a matter of a few days past the permissible 30 days, as the defendant's cross petition states "That the defendant was more than 30 days late in the June 4, 1958 instalment, as alleged in plaintiff's petition, but that the same was paid in just over 30 days after due and that said payment was next to the last payment due the plaintiff," and this statement nowhere appears to be disputed by the plaintiff. We also note that nowhere in her petition does the plaintiff on her part say what she proposes to do with the $7,200 already paid her by defendant under the $8,000 settlement; there is no offer or proffer of any refund; and we can only conclude that she means, if she can, along with our cooperation, to keep the money and retain a share in the land as well.

Plaintiff insists that the terms of a property settlement in a divorce decree are not subject to later modification, short of a showing of fraud (citing *Roddy* v. *Roddy,* 342 Mich 66, and numerous other cases, of which more presently), which fraud this cross-petitioning defendant concededly has neither alleged nor proved. Appellant urges that this rule should all the more apply when, as here, the provisions in question were the result of careful negotiations between the parties and their attorneys, and the terms approved by the latter in writing.

Appellant has correctly stated the prevailing rule of law in Michigan to the effect that decretal provisions for adjustment of property rights cannot be set aside, modified or altered in the absence of a showing of fraud or like reasons. (See cases collected in 10 Callaghan's Michigan Pleading & Practice, § 70.147, p 178; and in 9 MLP, Divorce, § 147, pp 598, 599.) An apparent exception is where it may

be said that the provisions require clarification (*Mitchell* v. *Mitchell*, 307 Mich 366) or where specific terms are ambiguous (*Nemecheck* v. *Nemecheck*, 250 Mich 641; see, also, *Johnson* v. *Johnson*, 291 Mich 237; and 10 Callaghan's Michigan Pleading & Practice, § 70.145, p 176). But the quoted terms and provisions of this particular decree are so plain that it would be a clear case of semantic juggling and evasion to say that their particular terms are obscure or ambiguous.

Another apparent and related exception to the general rule arises from the circumstance that a court of equity normally possesses inherent authority to enforce its own directives. This necessarily includes the exercise of some discretion in interpreting them; and where enforcement of a property settlement provision is sought in situations where the court in the original decree has directed that one of the parties perform specific acts, it is felt that the court necessarily reserves some latitude to construe the basic intent and purpose of the decreed directive, and may enter an appropriate supplemental order accordingly, despite the fact that the precise language of the original decree may not have spelled out exactly what was later found necessary to be done to achieve those broad purposes. This apparent exception proceeds from the proposition that decretal provisions as to property settlement, no matter how much haggled over and ultimately agreed on by the litigants prior to decree, are after all a part of the chancellor's own decree, presumably reached by him only after profound deliberation and in the exercise of his traditional broad discretion, and that when he is later besought by either of the parties on matters of enforcement, he has an equally broad discretion in interpreting and determining what it was and why he had originally so decreed.

Thus in *Rotzell* v. *Rotzell*, 241 Mich 122, the divorce decree incorporated an agreed property settlement, including disposition of certain real estate being sold by the parties on land contract, as follows:

"That the party of the first part, William Rotzell, shall sign and set over to party of the second part, by proper assignment, all his right, title and interest to a certain land contract now owned by the parties and on which there still remains due and owing to said parties the sum of, to wit: $3,300."

The husband duly executed such an assignment of the contract, as ordered by the decree, but did not execute any quitclaim deed, which accordingly left the record title standing in his name. Nearly 3 years after the entry of the decree the former wife petitioned the same court that he be compelled to do so. No fraud was alleged or shown. In holding that the former husband should be compelled to execute a quitclaim deed, this Court, after paying due homage to our venerable rule against later modification of a property settlement, in the absence of fraud, rather laconically spoke as follows (p 124):

"We shall not split hairs over the language of the agreement. It clearly contemplated a transfer of plaintiff's interest in the lands. A quitclaim deed would be an appropriate instrument to convey such interest and no good reason appears why it was not long ago executed."

The instant case presents the other side of the enforcement coin. Plaintiff has voluntarily submitted herself to the chancellor, alleging breach in and seeking enforcement of the quoted provisions of the decretal property settlement. Defendant admits breach but claims it was technical and not material. Before he may ever grant relief in such circumstances the chancellor must manifestly determine 2 things: first, was there in fact any default in or

breach of the decreed provisions as to property settlement? If so, and considering the basic purposes of the original provisions decreed by him, was the acknowledged breach material and substantial?

In our view this is what in effect was done by the chancellor below. He found an undeniable breach in the precise terms of the property settlement, but further found that such breach was technical and not substantial. He entered an order accordingly. This is the broad rationale of the *Rotzell Case* applied in reverse. In *Rotzell* we in effect read words into the property settlement which admittedly were not there in order (1) to find a breach and, (2) to belatedly order the performance of a specific affirmative act—all calculated to achieve what we conceived to be the basic purpose of the original provision. We think that decision is sound, but in this case we scarcely need go so far; there is no occasion to supply missing words; we can take the unaltered provision as it stands. Thus viewed we find (1) that indeed there was a breach in the precise terms of the decreed property settlement, but, (2) that such breach was merely technical and not material or substantial—again having in mind the basic purpose of the original provision, which in this case was that the former wife should be paid a fair amount for her just interest in the property in regular periodic instalments and without undue delay. To our mind those purposes were achieved.

As in *Rotzell,* and again without splitting hairs over the precise language of the agreement, we think the chancellor acted wisely, equitably, and within the necessary scope of his broad authority. Being requested and having assumed to act in the premises, in these circumstances the chancellor is not limited to a mere denial of the relief requested; to finally resolve the controversy and conclude the litigation he may also enter an appropriate supple-

mental order implementing his decision, and this whether or not he is requested to do so by any of the litigants. That is what was done here, and we approve the action. Unless the chancellor is to be reduced to the role of a rubber stamp he must be allowed some latitude and discretion in these circumstances, else proceedings looking toward the enforcement of decretal provisions as to property settlements might better be addressed to his clerk. At least that might be faster. The action below of this particular chancellor is both commended and affirmed, but without costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.