GUBIN v LODISEV

Docket No. 112216. Submitted November 22, 1991, at Lansing. De-
cided November 17, 1992, at 10:15 A.M. Leave to appeal sought.

Sandra L. Gubin brought an action in the Washtenaw Circuit
Court against Aleksei P. Lodisev, seeking a divorce and dam-
ages for fraud. The fraud claim was based on alleged misrepre-
sentations by the defendant that induced the plaintiff to marry
him and to assist him to immigrate to the United States. The
trial court, Kenneth Bronson, J., entered a judgment in the
amount of $113,087 on the fraud claim and a separate judg-
ment of divorce. The defendant appealed, and the plaintiff cross
appealed.

The Court of Appeals *held:*

1. The failure to raise in the trial court the question of
alleged improper extrajudicial discussions between the court
and a referee for the friend of the court precludes appellate
review of the issue.

2. The record supports the court's determination that the
defendant fraudulently induced the plaintiff to marry him for
no reason other than to gain entry into the United States.
However, because the fraud was so intimately bound up with
the marriage contract and the eventual breakdown of the
marriage, an independent action for fraud cannot be main-
tained under these circumstances. Accordingly, it was error for
the court to grant a separate judgment for fraud.

3. Although it was error to grant the separate judgment for
fraud, the court could consider the fraud in the divorce action
in its determination of the division of any marital property or
the award of alimony or alimony in gross.

4. Although the record supports the court's determination
that the plaintiff suffered lost earnings as the result of delaying
her graduate education while she devoted time and effort to
enable the defendant to come to this country, there is no

REFERENCES

Am Jur 2d, Aliens and Citizens §§ 1020, 1033, 1374-1375; Divorce
and Separation §§ 878-880.

See the ALR Index under Aliens; Deportation; Permanent Resi-
dents; Divorce and Separation; Property Settlement.

support for the additional award of payment for the time spent in those efforts.

5. The defendant's permanent resident alien status, acquired as a result of his marriage to the plaintiff, is not a marital asset, because, unlike an education degree, that status can be revoked if it is found that it was acquired through a fraudulent marriage.

Affirmed in part, reversed in part, and remanded.

1. DIVORCE — FRAUD — PROPERTY DIVISION — ALIMONY.

A person seeking a divorce may not maintain a separate action for damages for fraudulent inducement of marriage; a court in a divorce action may consider any fraud in the inducement of the marriage in determining the division of any marital property or an award of alimony or alimony in gross.

2. DIVORCE — MARITAL ASSETS — PERMANENT RESIDENT ALIEN STATUS.

An individual's federal permanent resident alien status acquired as a result of marriage to a United States citizen is not a marital asset subject to a property division upon divorce.

*Prather & Foley, P.C.* (by *James R. Stearns*), for the plaintiff.

*Fadel & Zayid, P.C.* (by *Ziad A. Fadel*), for the defendant.

Before: BRENNAN, P.J., and SHEPHERD and GRIFFIN, JJ.

SHEPHERD, J. Defendant appeals as of right from an October 26, 1988, judgment of divorce as well as the separate July 6, 1988, judgment awarding plaintiff $113,087 in damages for fraud. The fraud claim was based upon misrepresentations made by defendant to obtain plaintiff's assistance in helping him immigrate to the United States from the former Soviet Union. Plaintiff filed a cross appeal. We affirm the judgment of divorce. Concerning the fraud judgment, we conclude that it was entered in error. We remand in order for the trial court to determine the amount that may be awarded to the

plaintiff in the divorce action in the form of alimony, alimony in gross, or property as a consequence of defendant's fraudulent inducement of plaintiff to marry him.

On appeal, defendant first argues that reversal is required because the trial court engaged in extrajudicial communication with a referee of the office of friend of the court regarding the hearing held by that office and allowed that discussion to influence its decision. A court must base its decision on testimony given in open court, not extrajudicial information. *McCamman v Davis,* 162 Mich 435; 127 NW 329 (1910). Because this issue was not raised below, this Court will review it only if failure to do so would result in manifest injustice. *Petrus v Dickinson Co Bd of Comm'rs,* 184 Mich App 282, 288; 457 NW2d 359 (1990). Because there was no record made below with regard to this issue, the extent of communications between the referee and the trial court can only be based on speculation. Defendant speculates that the information influenced the trial court's decision. Because a meaningful review of this issue is not possible, we find no manifest injustice in deeming the issue to have been waived.

Defendant next argues that the trial court erred in denying his motion for a new trial based on the failure of the judgment to conform to the pleadings. Defendant contends that plaintiff's complaint originally included a count for economic fraud, but that during the course of trial plaintiff switched her theory to one of "love fraud." Defendant states that the trial court based its findings of fraud on the "love fraud" theory, even though the complaint was never amended accordingly. Defendant argues that he had no notice that this theory

would be relied upon at trial and did not present witnesses to address the issue. Defendant, therefore, asserts that the judgment should be set aside for failure to conform with the pleadings.

Our view of this case is that there is more than sufficient evidence that defendant fraudulently induced plaintiff to marry him by promising that if she would take the actions necessary to allow him to immigrate to the United States from the former Soviet Union, he would be a good and faithful husband. The plaintiff married him and devoted years of effort to bringing him to the United States from the Soviet Union, after which he promptly abandoned all pretense of having desired a marriage relationship based upon love and affection. There is no other conclusion that can be drawn from this record than that the defendant's actions were a blatant and crass attempt to fraudulently induce the plaintiff to marry him for no other reason than to obtain the means of lawful entry into the United States. This was the true reason for the breakdown in the marriage relationship. In this case, we are presented with a typical case of a fraudulently induced marriage, not with a separate case for fraud. The fraud was so intimately involved with the marriage contract that it cannot be separated. See *Mims v Mims,* 305 So 2d 787 (Fla App, 1974), where the Florida District Court of Appeal held that a wife could not assert a separate tort action alleging that the husband induced her to marry him with fraudulent promises of love and affection. In *Mims,* one of the grounds for dismissal was the Florida rule that tort actions between spouses are not permitted. Nevertheless, the *Mims* court, on the basis of the premarital fraud and policy considerations, decided that claims arising out of a fraudulent in-

ducement to marry are best resolved within the context of the divorce action.[1]

Although it is well established in Michigan that one spouse may maintain an action against the other for certain torts committed during their marriage, *Hosko v Hosko,* 385 Mich 39; 187 NW2d 236 (1971), we note that the actions that were permitted involved torts that are not bound so intimately with the breakdown of the marriage itself. See *McCoy v Cooke,* 165 Mich App 662; 419 NW2d 44 (1988), and *Goldman v Wexler,* 122 Mich App 744; 333 NW2d 121 (1983), where this Court ruled that res judicata did not bar a divorced woman from maintaining against her former husband a tort action for an alleged battery and intentional infliction of emotional distress committed after the divorce judgment had been entered. See also *Courtney v Feldstein,* 147 Mich App 70; 382 NW2d 734 (1985), where this Court stated that res judicata did not bar the plaintiff from maintaining an independent claim for damages arising from the defendant's alleged fraudulent conduct in their prior divorce proceedings regarding the value of his property.

We nevertheless believe that allowing an independent action for fraud in the context of a divorce action where the allegations of fraud relate to the very existence of the marital relationship would, as the court observed in *Mims, supra,* pp 789-790, "turn every, or almost every, dissolution case into two cases—one to secure a dissolution . . . and another, to secure damages from a jury or

---

[1] We note that the cause of action asserted in the present case for the fraudulent inducement to marry is not precluded by the "heart balm" statute barring a civil cause of action for the breach of a contract to marry, because the parties were legally married and the fraud action was asserted in a divorce context. MCL 600.2901; MSA 27A.2901; former MCL 551.301; MSA 25.191; *Carnes v Sheldon,* 109 Mich App 204, 211; 311 NW2d 747 (1981).

trial judge, for the 'wrongs' done by a tortious spouse." Not only would the allowance of a separate cause of action for fraud that is intimately related to the breakdown of the marriage lead to a multiplicity of lawsuits, but also it would result in an inefficient allocation of judicial resources. Here, the denial of plaintiff's fraud claim does not leave her without a remedy, because the trial court may take into account those same costs and losses in fashioning an award of alimony or property. *Thames v Thames,* 191 Mich App 299; 477 NW2d 496 (1991); *Sparks v Sparks,* 440 Mich 141; 485 NW2d 893 (1992). The trial court, sitting as a court of equity, in the divorce action, is capable of righting the wrong and putting plaintiff in the same position she would have been in if defendant had not deceived her. A separate tort action is thus rendered unnecessary, because plaintiff could obtain relief for her damages as part of the divorce action.[2]

Given that the trial court erred in awarding damages in a judgment in an independent fraud action, we reverse and remand for a determination whether plaintiff's expenses and losses arising out of the fraud should be reflected in an award in the

---

[2] In refusing to recognize a separate cause of action for fraud in a divorce context where the alleged fraud relates to the very existence of the marriage, we are not saying that there are no circumstances in which one spouse may bring an independent action for fraud or deceit against the other during the course of their marriage or afterward. We note that other jurisdictions have permitted independent tort actions for fraud in a divorce context. Cf. *Tice v Tice,* 672 P2d 1168 (Okla, 1983) and *Church v Church,* 96 NM App 388; 630 P2d 1243 (1981). See also Spector, Marital Torts, 15 Family Law Reporter 3023 (1989), for a concise discussion of the law in this area. We also note that if we were to permit such a separate action, we would soon see two cases filed in every divorce action, one to be decided by the court, another (fraudulent inducement to marry) by a jury. The next step in this progression would be the legal malpractice action against the attorney who failed to file two cases. We do not wish to impose the potential burden of defending two actions on large numbers of husbands or wives who are defendants in a divorce action.

form of alimony, alimony in gross, or property. The trial court should make this evaluation after the application of correct principles.[3] In this connection, we call to the court's attention that part of the award in this case is predicated on the fact that plaintiff was induced to give up earning capacity by the fraudulent misrepresentations of the defendant. We note that in *Sparks, supra,* p 160, the Court specifically stated that the "court may choose to consider the interruption of the personal career or education of either party" in determining the property settlement. And while it does not appear that defendant received any assets from the plaintiff, it is equally clear that the plaintiff's total assets were reduced by defendant's conduct. See *Lesko v Lesko,* 184 Mich App 395; 457 NW2d 695 (1990); *Ackerman v Ackerman,* 163 Mich App 796; 414 NW2d 919 (1987). To assist the trial court on remand, we will discuss the remaining issues on appeal.

The first issue concerns the extent of the remedy available to plaintiff as a result of the defendant

---

[3] The award of alimony is within the trial court's discretion and is based upon what is just and reasonable under the circumstances of the case. Factors to be considered are "(1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, and (12) general principles of equity. . . . In addition, the court may consider a party's fault in causing the divorce." *Thames, supra,* pp 307-308.

Although fault is one of the relevant factors in a property settlement, the Supreme Court in *Sparks, supra,* p 158, observed that the "trial court must consider all the relevant factors and not assign disproportionate weight to any one circumstance." Circumstances that may be considered in dividing property are: (1) duration of the marriage, (2) contributions of the parties to the joint estate, (3) age, (4) health, (5) life status, (6) necessities and circumstances, (7) earning ability, (8) past relations and conduct of the parties, and (9) general principles of equity. *Id.,* pp 159-160.

fraudulently inducing her to marry him. The total amount the trial court awarded plaintiff in the separate tort action was $113,087. The court awarded plaintiff $58,687 for loss of earning capacity for the delay in working on her doctorate degree and $15,000 for expenses incurred on behalf of her husband. It further awarded $36,400 ($200 a week for three and one-half years assuming twenty hours of work a week at a rate of $10 an hour) for time expended helping her husband reach this country and $3,000 in medical expenses.

Defendant argues that there was no evidence to support the trial court's award of $58,687 for lost earning capacity. A trial court's findings will not be reversed absent clear error. MCR 2.613(C). Although the trial court was operating under the wrong theory, we find that there is justification in the record for an award of this amount. Plaintiff presented expert testimony that she had lost earnings in that amount as a result of the time she spent on defendant's behalf in helping him reach this country, thus delaying the completion of her Ph.D. program. Therefore, plaintiff was deprived of earning capacity as a result of the fraudulent conduct of the defendant. The trial court would be correct in taking this into account in making an award to the plaintiff.

Defendant further argues that plaintiff received a duplicative recovery because she was also awarded $36,400 for the time she spent working on defendant's behalf to enable him to come to this country. We agree. We find that the trial court's award of $36,400 should be disregarded, because it is duplicative and without evidentiary support. Thus, plaintiff's fraud damages should be reduced from $113,087 to the amount of $76,687.

Defendant argues that the trial court erred in awarding plaintiff $3,000 for medical expenses for

therapy where there was no evidence that the medical expenses were proximately caused by defendant. However, we find that the trial court did not clearly err in finding that plaintiff's medical expenses were proximately caused by defendant. Plaintiff's psychologist testified that defendant's actions were the triggering cause of plaintiff's psychological problems, even if she had an underlying propensity for depression.

Defendant also contends that the damages awarded were excessive because he does not have either adequate assets or income to satisfy the judgment. Defendant has cited no authority that says that the amount that should be awarded for his fraud is dependent upon his ability to pay. The failure to cite legal authority for an issue waives that issue for appellate review. *In re Toler,* 193 Mich App 474, 477; 484 NW2d 672 (1992). However, in fashioning a remedy the trial court is free to impose reasonable payments that will accommodate defendant's ability to pay.

On cross appeal, plaintiff argues that the trial court erred in failing to award her damages for intentional infliction of emotional distress. We need not address this issue, because we have determined that plaintiff's right to recovery is not based on an independent tort but upon the fraudulent inducement to marry. Her right to an award is limited to those amounts that can be awarded in a divorce action.

Plaintiff further argues that the trial court erred in failing to consider defendant's "green card", the document evidencing his status as a permanent resident alien, a marital asset. Plaintiff contends that permanent resident alien status should be considered a marital asset just as a college degree may be. See *Postema v Postema,* 189 Mich App 89, 101; 471 NW2d 912 (1991). We

disagree. Initially, we note that, for public policy reasons, permanent resident alien status should not be treated in the same manner as a college degree. Under the Immigration and Nationality Act, 8 USC 1101 *et seq.,* marriages entered into for purposes of obtaining visas or other immigration documents can be found to be fraudulent, thereby allowing the federal government to deport aliens entering this country by way of fraudulent marriages. See 8 USC 1251(a)(1)(G). In light of the national public policy to avoid sham marriages for the purpose of immigration to this country, we believe that we should not attempt to assign a monetary value to a permanent resident status acquired by an alien through a marriage that is eventually dissolved in divorce proceedings. To place a value on the acquisition of permanent resident alien status means that a monetary value can be placed on having citizenship in this country. Ultimately, the reward of efforts to help a spouse become a resident alien may encourage others to marry for a possible profit motive rather than for more traditional reasons. Therefore, although it would not be impossible to determine the monetary value of permanent resident alien status as is done with a college degree,[4] public policy dictates that this type of analysis not be used with the acquisition of permanent resident alien status through marriage.

Moreover, we note that permanent resident alien status, unlike a college degree, may be revoked at some later time. The United States government could investigate at any point to deter-

---

[4] This is especially true considering that the green card could have an additional value on it when considering the increased earnings defendant could make in this country as opposed to his homeland. However, we do not preclude the trial court from concluding that defendant's ability to pay an award has been enhanced by the possession of a green card.

mine if immigration laws had been violated. 8 USC 1251(a)(1)(G)(ii). Therefore, an award on this basis not only may be speculative, but also premature. In the present case, the lower court file indicates that the United States Immigration and Naturalization Service apparently began its investigation into defendant's marriage after the divorce judgment was entered. Therefore, we find that the trial court did not clearly err in finding that defendant's permanent resident alien status was not a marital asset. *Postema, supra,* p 93.

In summary, we hold that where a divorce is granted on the basis of a fraudulent inducement to marry, the trial court may fashion a remedy that awards to the defrauded party those expenses and losses of earning capacity that arose out of the fraudulent conduct. On remand, the trial court is to determine whether plaintiff should be awarded the amount of $76,687 (the amount of damages awarded in the independent tort action) or some other greater or lesser amount more appropriately associated with a divorce action, taking into account all the factors enumerated in footnote 3. The amount awarded should be in the form of alimony, alimony in gross, or property.

Affirmed in part and reversed in part. Remanded to the trial court for further proceedings. We do not retain jurisdiction.[5]

---

[5] We leave the question whether additional testimony is required to the sound discretion of the court. The trial judge conducted the tort action as a bench trial, and we do not preclude his taking judicial notice of the prior proceedings.