# STATE OF MICHIGAN

# COURT OF APPEALS

JILL RENAE ZIENTEK,

Plaintiff-Appellant,

v

WOLFGANG ZIENTEK,

Defendant-Appellee.

UNPUBLISHED
March 2, 2017

No. 330477
Genesee Circuit Court
LC No. 14-310740-DO

Before: JANSEN, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

This appeal arises from the violation of a provision in the parties' judgment of divorce addressing the division of property kept in a storage unit. Plaintiff, Jill Renae Zientek,[1] appeals as of right the circuit court's order finding her in criminal contempt of court, ordering her to pay $7,500 in sanctions, $2,500 in damages, and defendant's attorney fees necessitated by plaintiff's conduct, and awarding the remaining contents of the storage unit to defendant, Wolfgang Zientek. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The parties married in September of 2010, and plaintiff filed for divorce on February 6, 2014. While divorce proceedings were pending, plaintiff removed property from the marital home, some of which defendant believed was personal property belonging to him and marital property to which he was entitled a share. When the parties appeared for a half-day bench trial on June 19, 2014, it came to light that plaintiff might have stored the property at the place where she was currently staying or in a rented storage unit. Accordingly, the trial court adjourned the trial and ordered the parties and their attorneys to locate and inventory or otherwise document any property in dispute. Subsequently, the parties went to plaintiff's storage unit, photographed its contents, and agreed that neither party, nor anyone acting on a party's behalf, would remove anything from the storage unit until further instructions from the court. The trial court memorialized this agreement in an August 13, 2014 order, which provided,

---

[1] After entry of the parties' judgment of divorce, plaintiff reverted to use of the last name "Doezema," her name from a previous marriage.

-1-

Effective June 19, 2014, Plaintiff's storage unit, #575, that was viewed and photographed by the parties and counsel, shall be and shall remain closed and locked. Neither party, nor anyone acting on their behalf, shall cause any item to be removed or fail to act to secure the premises (i.e., non-payment) until further order of the Court. The facility shall remain as it was when it was closed when the parties and their counsel were present.

When the divorce trial resumed on August 20, 2014, the parties had agreed on a proposed judgment of separate maintenance, which the trial court subsequently entered. Relative to the instant appeal, the judgment allowed each party to retain his or her "jewelry, personal effects, personal papers, etc. excluding the contents of the storage unit addressed separately herein." Regarding the storage unit, the judgment provided:

> The parties shall divide the contents of the storage unit whereby a third party shall be present to witness the division. *No other persons are to be present.* If the parties do not agree as to who is awarded a specific item, that item shall be set aside and sold and the parties shall share in the proceeds. The parties, through counsel, shall determine the third party and the method of sale for any items that are not agreed upon, *and they shall share in the cost of the [third] party, if any.*[2]

On January 2, 2015, the judgment of separate maintenance converted into the trial court's judgment of divorce.[3]

According to defendant, after he appeared in court for entry of the judgment of divorce, he became concerned about the storage unit and about a gun that was missing from his home. In response to these concerns, defendant's counsel issued a subpoena to the storage facility requesting the access records for plaintiff's unit. From these records, defendant learned that plaintiff had accessed the unit five times since the court's order of August 13, 2014. Thus, defendant filed an emergency motion asking the court for ex parte relief and to order plaintiff to show cause why she should not be held in contempt for violating the trial court's order and the judgment of separate maintenance/divorce. The trial court ordered the storage unit to be sealed, but reserved its decision on the property in the unit until a hearing on the matter.

That hearing occurred on March 2, 2015. In defense of her actions, plaintiff asserted that it had not been clear to her that she was not allowed to go into the storage unit, and she testified that the only items she had removed were a vanity, a pink chair, two lamps, a small painted sewing table, and clothing. In order to resolve the issue, the trial court instructed the parties to agree on a date and time to go to the storage unit and divvy up its contents, and set a review date for April 20, 2015. However, when the parties went to the storage unit, it became known that

---

[2] According to the record, plaintiff's attorney added the italicized sentences at plaintiff's request.
[3] The relevant provision states: "It is further ordered that findings, terms, conditions and orders of this Court's Judgment of Separate Maintenance of November 10, 2014, are hereby adopted by reference as if fully set forth in all particulars and shall become this Court's Judgment of Divorce."

plaintiff had removed more items than she had previously acknowledged. Defendant informed the court of the same at the April 20, 2015 review hearing, submitting before and after photographs of the unit's contents taken in June 2014, and April 2015 respectively. Plaintiff and her attorney agreed that the "after" picture accurately depicted what the storage unit looked like when the parties went there to divvy up its contents. The trial court gave the parties seven days to supplement their pleadings with whatever else they wanted the court to consider in deciding defendant's show cause motion. Both parties filed supplemental pleadings.

In a June 3, 2015 order, the trial court found that plaintiff, by her own admission, had engaged in indirect contempt of court with respect to the items in the storage unit. Accordingly, the court found plaintiff in criminal contempt and ordered her to pay $7,500 in sanctions, $2,500 in damages, and defendant's attorney fees necessitated by plaintiff's conduct, and it granted defendant's request for the remaining items in the storage unit. Plaintiff filed a motion for reconsideration challenging, among other things, the court's $2,500 damages award as being speculative, and arguing that the court had erred by not informing her she was at risk of being found in criminal contempt or informing her of and affording her the due process safeguards to which she was entitled. After giving defendant 21 days to respond, the trial court granted plaintiff's motion by way of an August 20, 2015 order, admitting that it had not given plaintiff a full hearing before finding her in contempt, but opining that it had provided her with sufficient due process to satisfy the statutory requirements.[4] Nevertheless, the court noted that the audio recording of the hearing showed "that [the court] did not make clear to Plaintiff whether the charges against her were civil or criminal in nature." The court further noted that, although it believes that it afforded plaintiff the presumption of innocence and the right against self-incrimination, it did not make that explicit to plaintiff on the record. Therefore, "[t]o provide Plaintiff the utmost due process protections," the court granted her a new hearing. Accordingly, the trial court concluded its written opinion by thoroughly informing plaintiff of her rights with regard to the criminal contempt charges against her.

The new hearing was held on October 2, 2015. After a brief opening statement, defendant indicated that he would rely on the pleadings and documents previously submitted. Plaintiff then moved for a directed verdict on the ground that defendant had presented no testimony establishing his claims, and that there had been no testimony at the hearing establishing that plaintiff had acted in willful disregard or disobedience of the court's orders or the judgment of divorce. After plaintiff's counsel explained that the court was obligated to render its contempt decision based on the testimony and evidence presented at the hearing, defendant's counsel asked to be allowed to offer "two minutes" of testimony. The trial court granted counsel's request, and defendant testified under oath regarding the before and after photographs of the storage unit, which then were admitted without objection as defendant's exhibits 1 and 2, respectively. Plaintiff's attorney was given an opportunity for cross-examination, but had no questions for defendant.

---

[4] MCL 600.1711(2) allows punishment for contempt of court "after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend."

After consulting with her attorney, plaintiff took the stand. The essence of her testimony was that she had taken items from the marital home to the storage unit, and that most of the items she removed belonged to her, but a few were jointly owned. She testified that she was aware of the August 13, 2014 order and of the judgment of separate maintenance, but did not know that either prohibited her from going into the storage unit. Plaintiff testified that she took the items from the storage unit so she could furnish her new apartment, not to "thwart" defendant or to violate the court's order. She acknowledged that the before and after photographs of the storage unit showed "quite a difference," but attributed it to most of the items in the storage unit being hers and her neglect in re-ordering the contents of the unit after she removed her belongings. On cross-examination, she testified that she did not remember the June 19, 2014 trip to the storage unit or the parties' agreement not to open the storage unit absent the court's instructions because she "black[s] out" and was "nervous and uncomfortable . . . [w]hen all this is going on." She testified on redirect that the entire episode was so upsetting to her that she "stepped back and shut down."

In the opinion and order from which plaintiff now appeals, the trial court observed that plaintiff admitted on multiple occasions that she had taken items from the storage unit, and that comparison of the before and after pictures showed that she had taken significantly more than she admitted to under oath, and that her "contradictory testimony that she did not know about or understand the Court's orders is not credible." Accordingly, the trial court concluded that "Defendant demonstrated, beyond a reasonable doubt," that plaintiff willfully violated Court orders.[5] The court fined plaintiff $7,500 for contemptuous behavior, pursuant to MCL 600.1715(1), ordered her to pay defendant $2,500 in damages, and awarded defendant attorney fees and all of the property remaining in the storage unit.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review a trial court's findings in a contempt proceeding for clear error and must affirm them if there is competent evidence to support them. *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). We review a trial court's issuance of a contempt order for an abuse of discretion, and questions of law de novo. *Porter v Porter*, 285 Mich App 450, 454-455; 776 NW2d 377 (2009). "The abuse of discretion standard recognizes that there will be circumstances where there is no single correct outcome and which require us to defer to the trial court's judgment; reversal is warranted only when the trial court's decision is outside the range

---

[5] The trial court explained its ruling in part as follows:

> [T]he Court does not believe that Plaintiff was unaware of, or confused about, the fact that neither she nor Defendant were entitled to remove items from the storage facility. Moreover, because Plaintiff claims that she no longer has the property, the Court cannot coerce compliance with its orders and is left only with the remedy of punishing Plaintiff through criminal contempt for her willful violations.

of principled outcomes." *Id*. at 455, citing *Maldonado v Ford Motor Co., 476 Mich 372, 388; 719 NW2d 809* (2006). Whether a party has been afforded due process is a question of law that is reviewed de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

## B. SUFFICIENCY OF THE EVIDENCE

Plaintiff first argues that the trial court violated her right to due process when it relied on admissions she made before she was apprised of the nature of the contempt charges against her and of the rights to which she was entitled, and because the trial court did not conduct the October 2, 2015 hearing as a criminal trial. We disagree.

Contempt of court is a willful act, omission, or statement that tends to impair the authority or impede the functioning of a court, *In re Contempt of Auto Club Ins Assoc*, 243 Mich App 697, 708; 624 NW2d 443 (2000), or a neglect or violation of a duty to obey a court order, *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 501; 608 NW2d 105 (2000). Courts have inherent independent and statutory authority to punish a person for contempt, *In re Contempt of Dougherty*, 429 Mich 81, 91 n 14; 413 NW2d 392 (1987), the purpose of which is to preserve the effectiveness and power of the courts, *In re Contempt of Auto Club Ins Assoc*, 243 Mich App at 708.

Contempt committed outside the presence of the court is referred to as indirect contempt of court and may be found only after proof of the facts charged is made by affidavit or other method and an opportunity has been given to defend. MCL 600.1711(2); *In re Contempt of Henry*, 282 Mich App at 675. Such indirect contempt of court can be punished only in conformance with statute, MCL 600.1711(2), court rule, MCR 3.606, and due process, see *In re Contempt of Auto Club Ins Assoc*, 243 Mich App at 713.

Proceedings regarding contempt may be civil or criminal. See *In re Contempt of Rochlin*, 186 Mich App 639, 644; 465 NW2d 388 (1990). "A defendant charged with contempt is entitled to be informed not only whether the contempt proceedings are civil or criminal, but also the specific offenses with which he or she is charged." *DeGeorge v Warheit*, 276 Mich App 587, 592; 741 NW2d 384 (2007). The distinction between civil and criminal proceedings is critical because of differences in the process due and the burdens of proof. *In re Contempt of Dougherty*, 429 Mich at 91. A criminal contempt proceeding requires some of the safeguards of an ordinary criminal trial. See *DeGeorge*, 276 Mich App at 592. A party in a criminal contempt proceeding is entitled to an opportunity to prepare his defense and to secure the assistance of counsel. *Id*. Further, "[a] party charged with criminal contempt is presumed innocent, enjoys the right against self-incrimination, and the contempt must be proven beyond a reasonable doubt." *Porter*, 285 Mich App at 456. In addition, the rules of evidence apply to a hearing on a contempt charge. *In re Contempt of Robertson*, 209 Mich App 433, 439; 531 NW2d 763 (1995).

To prove criminal contempt, the moving party must demonstrate beyond a reasonable doubt "(1) that the individual engaged in a willful disregard or disobedience of authority or orders of the court, and (2) that contempt has been clearly and unequivocally shown." *In re Contempt of Rapanos*, 143 Mich App 483, 488; 372 NW2d 598 (1985). A willful act is an act that is "[v]oluntary and intentional, but not necessarily malicious." *Black's Law Dictionary*, (10th ed), p 1834. "A voluntary act becomes willful, in law, only when it involves conscious

-5-

wrong or evil purpose on the part of the actor, or at least inexcusable carelessness, whether the act is right or wrong." *Id*.

Plaintiff's assertion that the trial court seemed not to appreciate the proceedings required in a criminal contempt matter has some record support. The record substantiates plaintiff's claim that the trial court was ready to rely on plaintiff's past admissions and on the pleadings and documents submitted by the parties prior to the contempt hearing as the basis for its criminal contempt decision. However, as plaintiff's attorney pointed out at the hearing, those documents constitute hearsay, i.e., statements made, other than those made by the declarant while testifying at trial, and "offered in evidence to prove the truth of the matter asserted." MRE 801(c). Given that the rules of evidence apply to a hearing on a contempt charge, *In re Contempt of Robertson*, 209 Mich App at 439, the documents upon which the trial court was poised to rely were inadmissible, absent an exception, MRE 802. Thus, plaintiff is correct that, at the time she moved for a directed verdict, defendant had not yet presented admissible evidence sufficient to prove criminal contempt beyond a reasonable doubt.[6]

Nevertheless, plaintiff's claim of error ultimately fails. Our review of the record convinces us that the trial court adequately informed plaintiff of the rights and process to which she was entitled in a criminal contempt proceeding. The court informed plaintiff of the charge against her in writing in its August 20, 2015 order granting her motion for reconsideration, and again at the beginning of the October 2, 2015 evidentiary hearing. See *DeGeorge*, 276 Mich App at 592. Plaintiff already had an attorney and had more than six weeks to prepare a defense against the charge. In addition, plaintiff has not disputed the trial court's statement in its order of June 3, 2015, that it believed it had afforded plaintiff the presumption of innocence, nor has plaintiff alleged that her self-incriminatory testimony at the October 2, 2015 hearing was coerced. See *Porter*, 285 Mich App at 456. Thus, the record shows that plaintiff was informed of the nature of the charge against her, given an opportunity to work with her attorney to prepare a defense, *DeGeorge*, 276 Mich App at 592, and afforded the presumption of innocence and the privilege against self-incrimination, *Porter*, 285 Mich App at 456. In addition, the testimony and evidence presented at the October 2, 2015 hearing supported the trial court's finding beyond a reasonable doubt that plaintiff had removed items from the storage facility unilaterally, in violation of the parties' judgment of divorce.

---

[6] Although there was some confusion regarding whether prior evidence was admissible for purposes of the October 2, 2015 hearing, the trial court conceded to the argument of plaintiff's counsel that the court should take testimony. We conclude that the trial court did not abuse its discretion by allowing the hearing to continue and by taking testimony.

Plaintiff's relies on *Roller v Roller*, unpublished opinion per curiam of the Court of Appeals, issued January 14, 2016 (Docket No. 324130) to support her claim of a procedural due process violation. Although unpublished opinions are not binding precedent, they may be instructive or persuasive. *People v Jamison*, 292 Mich App 440, 445; 807 NW2d 427 (2011). With regard to the issue before this Court, *Roller* is not helpful to plaintiff.

At issue in *Roller* was whether the defendant's due process rights in a criminal contempt proceeding were violated when the trial court reached its contempt decision in reliance on self-incriminating testimony the defendant gave prior to being informed that the contempt proceedings were criminal and that she had a right not to incriminate herself. *Roller*, unpub op at 3-4. The Court noted that " '[a] defendant cannot be found guilty of criminal contempt when the proceedings lacked any semblance of a criminal trial[.]' " *Id*. at 4, quoting *Ann Arbor v Danish News Co*, 139 Mich App 218, 231; 361 NW2d 772 (1984). Accordingly, the trial court concluded that, "because defendant was deprived of her constitutional right to due process, we conclude that the trial court erred in issuing an order finding her in criminal contempt." *Id*.

The significant distinction between *Roller* and the present case is that, in reaching its contempt decision, the trial court in *Roller* relied solely on testimony given by the defendant in a friend of the court proceeding at which the referee did not clarify the nature of the contempt charge or the defendant's rights. In the present case, the plaintiff gave self-incriminating testimony at the October 2, 2015 hearing, after the trial court clarified the nature of the contempt charge and explained plaintiff's rights, and after plaintiff consulted with her attorney prior to testifying at the hearing. In *Roller*, the trial court's after-the-fact clarification that they were dealing with a criminal contempt matter could not cure the prior due process violation, as the court took no post-clarification testimony. *Id*. In the present case, however, the trial court's clarification arguably did cure any due process violation. Plaintiff incriminated herself at the October 2, 2015 hearing, fully informed of her rights and after receiving the advice of counsel. Moreover, in addition to plaintiff's October 2, 2015 testimony, the trial court's finding of criminal contempt was fully supported by the properly admitted before and after photographs of the storage unit that was under plaintiff's exclusive control.

In light of the record support for the trial court's findings of fact, and mindful that this Court does not weigh the evidence or the credibility of witnesses in determining whether there is competent evidence to support the trial court's findings, see *In re Contempt of Henry*, 282 Mich App at 668, we conclude that the trial court did not abuse its discretion in issuing an order of criminal contempt against plaintiff.

C. BURDEN SHIFT

Plaintiff next argues that the trial court improperly shifted the burden from defendant to prove his damages, to plaintiff to prove that defendant's damages assessment was inaccurate. Plaintiff bases her claim of error on the trial court's statement in its August 20, 2015 opinion and order that plaintiff could use the October 2, 2015 hearing "as one last chance to provide evidence as to a more accurate valuation of the missing property".

MCL 600.1721 provides statutory authority for the recovery of compensatory damages in contempt proceedings as follows:

> If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.

"[U]nder a plain reading of MCL 600.1721, a court must order a person found to be in contempt of court to indemnify any person who suffers an actual loss or injury as a result of the contemnor's misconduct." *Taylor v Currie*, 277 Mich App 85, 100; 743 NW2d 571 (2007). This Court has further observed that MCL 600.1721 makes no distinction between civil and criminal contempt, and has held that the indemnification sanction mandated by the statute applies "even when a trial court imposes a punitive (i.e., criminal) sanction on a contemnor." *Id*. Defendant has the burden to prove the amount of loss he suffered due to plaintiff's contemptuous acts. *In re Contempt of Rochlin*, 186 Mich App at 651.

It is true that the trial court gave plaintiff another opportunity to provide "a 'more accurate' estimate of the value of the items removed from the unit" at the October 2, 2015 hearing. However, when this statement is read in light of the parties' dispute about the property in the storage unit, it does not appear to us that the effect of the statement was to shift defendant's burden of proof, which he met with the best evidence available to him given plaintiff's wrongdoing: before pictures showing what was in the storage unit at the time the court ordered it to remain closed, and after pictures showing what was left in the storage unit after plaintiff entered the unit and removed items in violation of the order and the judgment of separate maintenance/divorce. Defendant also produced a list of what he believed to be "missing items" from the marital home, while plaintiff provided the trial court with a copy of the same list with her handwritten objections and corrections. Viewed in this light, the court's invitation to plaintiff did not shift the burden of proof from defendant to plaintiff so much as give plaintiff another opportunity to potentially minimize the economic consequences of her wrongdoing by giving the court more to work with to assess the items and value of the property removed from the storage unit.[7]

---

[7] Plaintiff asserts in passing that "attorney fees were never proven because of the Trial Court's wrongful imposition of placing the entire burden of proof in this matter on Appellant." Not only does plaintiff fail to explain the basis for her assertion, but the record shows that defendant's attorney did bring up attorney fees at the October 2, 2015 hearing when she asked the court to affirm its prior award of attorney fees, for which she had submitted an affidavit, and to add to it an amount for her appearance at the contempt hearing. Plaintiff's attorney objected to any discussion of attorney fees, stating: "This was not brought up on any testimony here today. She's arguing for something else totally different. That can be set for another day but it certainly can't be used here in evidence at this particular time or in closing argument."

Plaintiff asserts that the award of $2,500 for the loss of defendant's personal property and his share of the marital property removed from the storage unit was "speculative, only, and had no basis in fact." As the trial court's explanation of how it arrived at the damages award indicates, the court based its decision on an analysis of information submitted to the court and exchanged by both parties as exhibits to motions, briefs, and supplemental pleadings, on the testimony of the parties, and on photographs accepted as accurate by both parties. Thus, the court's award did have a basis in fact.

Plaintiff relies on *Gubin v Lodisev*, 197 Mich App 84; 494 NW2d 782 (1992), to imply that the trial court finding that defendant's losses are $2,500 is clear error because it is based on "extrajudicial information" rather than on information offered at the October 2, 2015 hearing. Plaintiff's reliance is misplaced. The "extrajudicial information" at issue in *Gubin* was extrajudicial communication between the trial court and a referee of the office of the friend of the court that the defendant speculated had influenced the court's decision against him. *Gubin*, 197 Mich App at 86. In the instant case, the information the trial court used to reach its damages award was not "extrajudicial" in the same sense as were the extrajudicial communications alleged in *Gubin*.

It cannot go without notice that plaintiff's actions prevented defendant from providing a more precise measure of his damages. Under the circumstances of plaintiff's wrongdoing, defendant presented the best evidence available to prove the amount of his loss: the before and after photographs and his testimony, over plaintiff's objection, regarding the approximate percentage of property plaintiff removed from the storage unit. As defendant stated in his brief to this Court, "it would be a gross injustice to allow Plaintiff-Appellant to claim she was wronged by the trial court's findings, when her own wrongful actions made it impossible for Defendant-Appellee to determine the value of the missing property." The court's assessment of damages was not so much speculative as it was as precise a determination as it could manage under the circumstances.

Finally, the relevant question is whether the evidence presented at the October 2, 2015 hearing supports an award of $2,500 for the loss of defendant's property occasioned by plaintiff's wrongdoing. Defendant testified, over plaintiff's objection, that "like 90%" of the property had been removed from the storage unit, and he submitted before and after photographs of the storage unit showing, in the words of the court, that the once-full unit had been "substantially emptied." Given the particular circumstances of this case, the trial court's finding that the loss of defendant's property had a value of $2,500 does not appear to be clear error. To require defendant to present a more precise measure of damages when plaintiff's actions made it impossible to value the property in the storage unit would be tantamount to rewarding plaintiff for wrongfully removing the property and thereby making it impossible for defendant to establish more precisely the value of the property in which he claimed ownership or a share.

## D. MODIFICATION OF JUDGMENT OF DIVORCE

Plaintiff further argues that the trial court's award of the items remaining in the storage unit to defendant was contrary to law because it represented a modification of the judgment of divorce without proper grounds.

"A court possesses inherent authority to enforce its own directives." *Walworth v Wimmer*, 200 Mich App 562, 564; 504 NW2d 708, 709 (1993), citing *Greene v Greene*, 357 Mich 196, 202; 98 NW2d 519 (1959). "A divorce case is equitable in nature, and a court of equity molds its relief according to the character of the case; once a court of equity acquires jurisdiction, it will do what is necessary to accord complete equity and to conclude the controversy." *Walworth*, 200 Mich App at 564. Moreover, MCL § 600.611 "provides circuit courts with 'jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments.' " *Id*.

In the instant case, the trial court's order after the October 2, 2015 hearing affirmed its June 3, 2015 award to defendant of the remaining property in the storage unit. The trial court explained the original award as follows:

> Defendant has requested that Court [sic] modify its order to award the remaining property of the storage unit to him. Plaintiff argues that such modification of property settlements is not a possible [sic] because this Court is bound by the property settlement reached in the Judgment of Separate Maintenance, citing *Lentz v Lentz*, 271 Mich App 465[;] 721 NW2d 861 (2006). Here, though, the parties failed to property [sic] execute their property settlement in accordance with the Judgment of Separate Maintenance. Instead, the Court finds that Plaintiff conducted her own personal property settlement of the storage Unit outside the presence of Defendant. To execute the property settlement contemplated by the Judgment of Separate Maintenance, which provides that "the parties divide the contents with a third party present to witness the division" would be impossible because of Plaintiff's actions. Given that Plaintiff has already taken the share of the property she wanted, the Court awards the remaining property in the storage unit to Defendant, not as a modification of the Judgment but as a mechanism of enforcement.

Plaintiff relies on *Lentz* to contend that the trial court was bound to follow the terms of the judgment of divorce regarding the division of the property remaining in the storage unit, but, again, plaintiff's reliance is misplaced. *Lentz* did not address a situation in which one of the parties violates a property agreement incorporated into a judgment of divorce. At issue in *Lentz* was whether the trial court was obligated to include in a judgment of divorce a property agreement reached by the parties where the court found fault with the agreement, but the agreement was not ambiguous, and there was no evidence that it resulted from fraud, coercion, or duress. *Lentz*, 271 Mich App at 477-478. In the instant case, the parties' agreement regarding the property in the storage unit was incorporated into the judgment of separate maintenance, which then converted into the judgment of divorce. However, by her own admission, plaintiff removed property from the storage unit, thus violating the parties' agreement. Although plaintiff asserted that she did not understand that the parties' agreement prohibited her from unilaterally

taking things out of the storage unit, the trial court found that her assertions lacked credibility, an assessment this Court does not second-guess. See *In re Contempt of Henry*, 282 Mich App at 668.

We conclude that, given the particular facts of this case, the trial court did not clearly err in finding that plaintiff had violated the terms of the judgment of divorce when she "conducted her own personal property settlement." Nor does it seem inequitable for the trial court to enforce the relevant provision in the judgment of divorce by awarding the property left in the storage unit to defendant.

Affirmed.


/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Michael F. Gadola