186 Mich. App. 639 (1990)
465 N.W.2d 388
In re CONTEMPT OF ROCHLIN
KANE
v.
ROCHLIN
Docket No. 114828.
Michigan Court of Appeals.
Decided December 17, 1990, at 9:10 A.M.
Heck & Webb (by William W. Webb), for the plaintiff.
Bassey & Selesko, P.C. (by Kieran F. Cunningham), for the defendant.
Before: DANHOF, C.J., and CAVANAGH and W.R. BEASLEY,[*] JJ.
PER CURIAM.
Defendant appeals as of right from the trial court's order finding him guilty of three acts of criminal contempt, including perjury, the failure to produce records, and the disbursement of *642 funds, the latter two in violation of an earlier court order. Defendant contends on appeal that his failure to produce records constituted civil, not criminal, contempt, that he was not given adequate notice of two of the contempt charges, and that the trial court could not properly require him to pay damages in the absence of plaintiff showing an actual loss. We affirm in part and reverse in part.
On March 14, 1986, plaintiff obtained a default judgment against defendant, a physician, in the amount of $90,771.36, for monies due, with interest and costs, on a $50,000 promissory note executed by defendant in May 1980. On March 20, 1986, the trial court issued an order (1) requiring defendant to produce certain records for inspection and copying at a specified location on April 10, 1986, (2) requiring defendant to be examined under oath concerning those records on April 21, 1986, (3) restraining defendant from transferring or disposing of his property until further court order, and (4) restraining Hewitt Road, P.C., defendant's clinic, from transferring or disposing of any of defendant's property or paying any money "not exempted by law from application to the satisfaction" of the default judgment. On April 4, 1986, defendant moved to set aside the default judgment. On April 10, 1986, the trial court ordered defendant and Hewitt Road, P.C., to show cause why they should not be "punished for contempt of court in the disobedience" of the court's March 20, 1986, order. On April 30, 1986, the trial court denied defendant's motion to set aside the default judgment without prejudice and modified its March 20, 1986, order to require defendant and his clinic to produce the specified documents, but to allow deletion of those portions of the documents protected by the physician-patient privilege. An *643 evidentiary hearing was held, and on June 26, 1986, the trial court denied defendant's motion to set aside the default judgment and amended the amount of the judgment to $84,506.04. On October 29, 1986, the trial court issued an order directing defendant to appear on November 12, 1986, and show cause why he should not be held "in criminal contempt of court" for:
1. Failure to produce the books and records set forth in this Court's order for examination and restraining transfer of property dated March 20, 1986; and this Court's Order dated April 30, 1986;
2. Hewitt Road P.C.'s disbursement of over $9,000.00 to defendant Rochlin in further violation of this Court's order for examination and restraining transfer of property dated March 20, 1986;
3. Failure to disclose, through purjury [sic], ownership interests in a Mercedes Benz & BMW while testifying at the May 7, 1986 creditor's examination.
On the date scheduled for the show cause hearing, defendant filed a bankruptcy petition in federal court. As a result of the automatic bankruptcy stay, the trial court issued an order for administrative closing of the case.
Trial was held in bankruptcy court in June 1987, and the bankruptcy judge directed a verdict for defendant, finding no basis for plaintiff's objection to discharge of the debt. Defendant was adjudicated bankrupt, and the federal district court affirmed the bankruptcy court's determination of bankruptcy. Although plaintiff's appeal of that determination was pending in the United States Court of Appeals for the Sixth Circuit, the federal district court judge ruled that criminal contempt proceedings would not interfere with the federal appeal and that the bankruptcy stay was terminated upon discharge of defendant.
*644 The trial court reopened the case and refused to consider defendant's failure to produce records as civil contempt. At the conclusion of a bench trial, the court found defendant guilty of the criminal contempts of perjury, failure to produce records, and disbursement of money in violation of a court order, pursuant to MCL 600.1701; MSA 27A.1701. The court ordered defendant to pay a total fine of $750 and to serve a total term of ninety days in jail for the three acts of criminal contempt, and provided that the jail term was to be suspended upon defendant's payment of $66,556 in restitution to plaintiff.
First, defendant contends that his failure to produce records was an act of civil, not criminal, contempt. We disagree.
In Gompers v Bucks Stove & Range Co, 221 US 418, 441; 31 S Ct 492; 55 L Ed 797 (1911), the United States Supreme Court distinguished between criminal and civil contempt by focusing on the character and purpose of the punishment imposed upon the contemnor:
It is not the fact of punishment but rather its character and purpose that often serve to distinguish between [criminal and civil contempt] cases. If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.
The Court offered the following test for determining the character of the punishment:
The distinction between refusing to do an act commanded,  remedied by imprisonment until the party performs the required act; and doing an act forbidden,  punished by imprisonment for a definite term; is sound in principle, and generally, if *645 not universally, affords a test by which to determine the character of the punishment. [Id. at 443.]
Recently, in In re Contempt of Dougherty, 429 Mich 81, 95-96; 413 NW2d 392 (1987), our Supreme Court addressed the nature of contempt proceedings and acknowledged that it had, in the past, recognized essentially the same distinction advanced in Gompers. As the Court stated in People ex rel Attorney General v Yarowsky, 236 Mich 169, 171-172; 210 NW 246 (1926), quoting State v Knight, 3 SD 509; 54 NW 412 (1893):
"If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil, and he stands committed till he complies with the order. The order in such a case is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court. If, on the other hand, the contempt consists in the doing of a forbidden act, injurious to the opposite party, the process is criminal, and conviction is followed by fine or imprisonment, or both; and this is by way of punishment. In one case the private party is interested in the enforcement of the order, and, the moment he is satisfied, the imprisonment ceases. On the other hand, the State alone is interested, in the enforcement of the penalty, it being a punishment which operates in terrorem, and by that means has a tendency to prevent a repetition of the offense in other similar cases."
Thus, the purpose of imprisoning a civil contemnor is coercion, while the purpose of imprisoning a criminal contemnor is punishment. 429 Mich 91. As our Supreme Court noted, the distinction may be critical, because a criminal contempt proceeding requires some, although not all, of the due *646 process safeguards of an ordinary criminal trial. Id.
MCL 600.1715; MSA 27A.1715, which codified the common-law power to punish contempts, provides:
(1) Except as otherwise provided by law, punishment for contempt may be a fine of not more than $250.00, or imprisonment which, except in those cases where the commitment is for the omission to perform an act or duty which is still within the power of the person to perform shall not exceed 30 days, or both, in the discretion of the court.
(2) If the contempt consists of the omission to perform some act or duty which is still within the power of the person to perform, the imprisonment shall be terminated when the person performs the act or duty or no longer has the power to perform the act or duty which shall be specified in the order of commitment and pays the fine, costs, and expenses of the proceedings which shall be specified in the order of commitment.
Section 1715 implicitly recognizes the difference between civil contempt, or the failure of the contemnor to perform some act still within his power to perform, punishable by an indefinite coercive sentence, and criminal contempt, or the committing of an act forbidden by the court, for which the punishment for violating a court's order is limited to a $250 fine, thirty days imprisonment, or both. Dougherty, 429 Mich 97.
Our Supreme Court in Dougherty, 429 Mich 97, also recognized two types of civil contempt sanctions, coercive and compensatory. As the United States Supreme Court explained in United States v United Mine Workers, 330 US 258, 303-304; 67 S Ct 677; 91 L Ed 884 (1947):
Where compensation is intended, a fine is imposed, *647 payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, and his right, as a civil litigant, to the compensatory fine is dependent upon the outcome of the basic controversy.
But where the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired. [Citations omitted.]
Thus, a court has three sanctions available to remedy or redress the contemnor's contemptuous behavior: (1) criminal punishment to vindicate the court's authority, (2) coercion, to force compliance with a court order, and (3) compensatory relief for the complainant. 429 Mich 98.
Defendant argues that, under the test in Dougherty, his failure to produce records was civil, not criminal, contempt. However, the Court in Dougherty, 429 Mich 97, pointed out that the test for distinguishing between civil contempt, or refusing to do an act commanded, which would permit a coercive remedy, and criminal contempt, or doing an act forbidden, which would allow only punishment for the completed act of disobedience, is only a general one. The Court explained:
[A] coercive sanction is proper where the contemnor, at the time of the contempt hearing, is under a present duty to comply with the order and is in present violation of the order. Where the contemnor is not in present violation of the order, there is no need to coerce compliance, since, of course, there is already compliance....
However, where there is only a past duty to obey the court order, or a present duty, but only a past violation of the order, a coercive sanction is *648 not permissible. It is not a proper sanction because there is nothing to coerce. In fact, defendant is, at the time of the hearing, either in actual compliance with the order, or under no present duty to comply. In such a case the court is limited to imposing a criminal sanction, after a properly conducted criminal contempt proceeding, or issuing a civil contempt order compensating the complainant for actual losses. [Dougherty, 429 Mich at 99-100.]
In this case, at the time of the contempt proceedings, defendant had been discharged in bankruptcy, and plaintiff either had received or no longer needed the records defendant had been ordered to produce. Defendant acknowledges on appeal that, at the time of his contempt trial, he had fully complied with the court's order. Thus, there was no need for the trial court to coerce compliance with its order, and criminal contempt proceedings were appropriate. See In re Contempt of Rapanos, 143 Mich App 483, 496-497; 372 NW2d 598 (1985). Moreover, the trial court's purpose in imposing sanctions was to remedy acts which constituted "an imminent threat to the orderly administration of justice...." The court's intent was to punish defendant for his past failure to produce the records, not to coerce him into producing the records at the time of the contempt hearing. Therefore, the trial court properly found that defendant's failure to produce the records was an act of criminal contempt, and we affirm that conviction.
Second, defendant contends that he was found guilty of two acts of criminal contempt of which he did not receive adequate notice. While due process does not require that an individual charged with criminal contempt be afforded all of the safeguards of the an ordinary criminal trial, Dougherty, 429 *649 Mich 91, he is entitled to be informed of the nature of the charge against him and to be given adequate opportunity to prepare his defense and to secure the assistance of counsel. In re White, 327 Mich 316, 317; 41 NW2d 882 (1950); In re Smilay, 235 Mich 151, 156; 209 NW 191 (1926). A defendant charged with contempt is entitled to be informed not only whether the contempt proceedings filed against him are civil or criminal, Ann Arbor v Danish News Co, 139 Mich App 218, 232; 361 NW2d 772 (1984), but also the specific offenses with which he is charged. Cross Co v UAW Local No 155 (AFL-CIO), 377 Mich 202, 215; 139 NW2d 694 (1966); In re White, 327 Mich 317.
The third charge stated in the show cause order concerned defendant's failure to disclose, through perjury, his ownership interest in two automobiles. However, defendant was found guilty of criminal contempt for perjury on the basis of his having made a false statement to conceal a bank account. Thus, the act on which the third contempt charge was based was not the act of criminal contempt of which defendant was found guilty. Due process required that defendant receive more specific notice of the charge of which he was found guilty in order to give him the opportunity to prepare a defense against that particular charge. We are not persuaded that his being informed of the charge through the opening statement of plaintiff's counsel on the first day of the contempt trial afforded him that opportunity, even though there was a delay after that first day. Therefore, defendant's conviction of the criminal contempt of perjury must be reversed.
Contrary to his claim on appeal, defendant was given sufficient notice of the charge concerning his clinic's disbursement of money in violation of the court's March 20, 1986, order. Although the trial *650 court found that the clinic's payment of a salary to defendant was not a violation of the order, the clinic's nonretention of that portion of the salary subject to garnishment was a violation of the order, which restrained the payment of monies due to defendant "not exempted by law from application to the satisfaction of" the default judgment. Therefore, we affirm defendant's conviction of the criminal contempt of disbursement of money in violation of court order, reverse his conviction for the criminal contempt of perjury, and vacate his sentence for the latter contempt charge.
Finally, defendant contends that the trial court erred in requiring him to pay $66,556 in restitution to obtain suspension of the jail term imposed. Defendant argues that there was no showing plaintiff suffered damages in that amount as a result of defendant's contemptuous acts. We agree.
MCL 600.1721; MSA 27A.1721, which codified the compensatory sanction, provides:
If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.
Section 1721 clearly authorizes a court to order the payment of a sum to indemnify a party who has sustained a loss as a direct result of the other party's contempt. Homestead Development Co v Holly Twp, 178 Mich App 239, 245; 443 NW2d 385 (1989); Plumbers & Pipefitters Local Union No 190 v Wolff, 141 Mich App 815, 818; 369 NW2d 237 *651 (1985). The burden of proving the amount of the loss sustained rests on the party claiming it. Homestead Development Co, supra at 245.
In this case, the trial court made no findings relative to the amount of loss suffered by plaintiff as a result of defendant's acts of criminal contempt. Instead, the court merely accepted the amount proposed by plaintiff's counsel and cut off plaintiff's attempt to explain the basis for that figure. Although defendant's attorney argued in response that the acts of contempt did not result in damage to plaintiff and that plaintiff had offered no evidence to substantiate such a loss, the trial court did not address the issue and imposed sentence. Under these circumstances, plaintiff is entitled to an opportunity to show the loss he sustained as a result of defendant's contemptuous acts. On the basis of the parties' proofs, the trial court may then make a determination pursuant to § 1721.[1]
Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[*] Former Court of Appeals judge, sitting on the Court of Appeals by assignment.
[1] We recognize that, while the statute itself appears to allow compensation in both civil and criminal contempt cases, the Court in Dougherty, 429 Mich 97, suggests that compensatory relief may be available only for civil contempts. However, that issue was not raised on appeal, and, therefore, we do not address it.