*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Contempt of LUKE JOHNSON.

L. H. JOHNSON CONSULTING, LLC,

Plaintiff,

and

LUKE JOHNSON,

Plaintiff-Appellant,

UNPUBLISHED
March 10, 2022

No. 356742
Calhoun Circuit Court
LC No. 2014-000079-CB

HORIZON UNLIMITED ENVIRONMENTAL,
LLC, also known as HORIZON UNLIMITED
ENVIRONMENTAL, INC., MELVIN CENTER,
and ERIC JACOBSEN,

Defendants-Appellees,

and

DAVID LOBER, doing business as DL WELDING
& FAB,

Intervenor.

Before: RIORDAN, P.J., and K. F. KELLY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Luke Johnson, appeals by right the trial court's order holding him in criminal contempt of court. Finding no errors warranting reversal, we affirm.

-1-

## I. BASIC FACTS AND PROCEDURAL HISTORY

This appeal concerns plaintiff's behavior during a hearing on motion to quash filed by an intervening party, David Lober, doing business as DL Welding & Fab (DL Welding). Leading up to this hearing was a six-year dispute over the satisfaction of a judgment in favor of plaintiff's company, coplaintiff L. H. Johnson Consulting, LLC (LH Johnson Consulting). Plaintiff appeared at the motion to quash hearing "via audio" and without counsel.

Michael C. Bingen, counsel for DL Welding and defendants Horizon Unlimited Environmental, LLC, also known as Horizon Unlimited Environmental, Inc., Melvin Center and Eric Jacobsen, argued that plaintiff could not represent L. H. Johnson Consulting himself and needed counsel to do so. This argument led to the exchange that occurred between plaintiff, Bingen, and the trial court, resulting in the trial court finding plaintiff in criminal contempt:

> *The Court*: Okay. Thank you. Mr. Bingen, do you wish to make an opening statement or proceed to proofs?
>
> *Mr. Bingen*: Well, Your Honor, just preliminarily, Johnson Consulting LLC has not appeared in this matter and is not represented by counsel.
>
> *Mr. Johnson*: Whatever.
>
> *The Court*. Sir, if he's making an argument, I don't need comments from you. You will have a chance to comment.
>
> *Mr. Johnson*: I understand, sir. Thank you.
>
> *The Court*: Go ahead, Mr. Bingen.
>
> *Mr. Bingen*: So, preliminarily, Your Honor, I would ask that the Court, in light of the fact that there is no appearance of counsel on behalf of LLC—
>
> *Mr*. Johnson: This is a joke.
>
> *Mr*. *Bingen*: –L. H. Johnson, LLC, that the Court consider my brief and the attached exhibits and enter an order in my favor. In favor of David Lober.
>
> *The Court*: Okay. Mr. Johnson, what is your response to the request?
>
> *Mr. Johnson*: I am here to represent myself because I—I wasn't able to get counsel, Your Honor. And this has been just a big circus from the get-go. I would use the word disaster and to be honest with you I am here to represent myself. If he wants to say I'm not—that I need representation, then I am not buying that. So, go ahead, Your Honor.
>
> *The Court*: Okay. You may not buy it, sir, but we—he's arguing a legal point because—

*Mr. Johnson*:  Yeah, yeah, whatever.

*The Court*: You as an individual—he—well, listen.  You as an individual cannot represent an LLC.  A corporation, an LLC—

*Mr. Johnson*:  That money was given out of my personal account, Your Honor.

*The Court*: Sir, just listen.

*Mr. Johnson*: Not—

*The Court*:  Just stop talking and listen, okay.  You can talk after I'm done.

*Mr. Johnson*: Okay, Your Honor.

*The Court*:  What he is saying that legally that, for instance, a corporation has to have representation.  They have to be represented by an attorney.  You couldn't have a board member—you couldn't have a shareholder come in and represent the corporate entity.  You would have to have an attorney.  Ample case law for that.  So—

*Mr. Johnson*: Sure.

*The Court*: –if you were an individual and you were suing or you were being sued individually, you could represent yourself.  But you can't represent yourself— or you cannot represent the corporate or the limited liability company, in this particular matter.  And that is what he's arguing.  So, what is your response to that?

*Mr. Johnson*:  My response is that—I mean, personally, I don't think you really have handled this case that well, Your Honor.

*The Court*: Well, I'm not asking for your comment.  I am asking for—

*Mr. Johnson*: Through the whole way through—you are more of a divorce—

*The Court*: I'm asking for your response, sir.

*Mr. Johnson*: —you are more of a divorce type attorney.  You haven't handled many cases like this.  I can tell, because it has been mishandled by you the whole way through.

*The Court*: Okay. Well, sir, if that—if you think that, you have a right to appeal to the Court of Appeals.  That is your action you can take.

*Mr. Johnson*: Sure.

*The Court*: Now, I will tell you, I am the Business Court Judge—basically appointed by the Michigan Supreme Court. I've been the only Business Court Judge in the county for seven years.

*Mr. Johnson*: Sure.

*The Court*: And I'm the only one that handles them in Calhoun County. So, if you have recourse, take it up with the Court of Appeals. How do you respond, substantively, to Mr. Bingen's argument?

*Mr. Johnson*: To be honest with you, I think it is just a bunch of garbage. The fact that I need to have an attorney to represent myself, when that money came out of my own account anyways. I mean, this has been the whole, the whole way through it has been a struggle with you, Mr. Kirkham. You haven't handled this case worth a s***.

*The Court*: Okay. Sir, do you want to be held in contempt of Court?

*Mr. Johnson*: I don't care.

*The Court*: Okay. Okay, what I will do is the Court is holding you in contempt of Court, sir, in this particular matter.

*Mr. Johnson*: Sounds good.

*The Court*: Okay.

*Mr. Johnson*: File it.

*The Court*: Okay. What we will do is—what the Court is going to do is hold you in contempt of Court. The Court will sentence you, in this particular matter, on a summary fashion. The contempt of Court happening within the immediate view of the Court. The Court will, in fact, impose a seven-day jail sentence for your contempt of Court, in this matter.

*Mr. Johnson*: Okay.

At the end of the hearing, the trial court granted DL Welding's motion to quash. This appeal followed.

## II. STANDARDS OF REVIEW

Constitutional questions are questions of law this Court reviews de novo. *In re MS*, 291 Mich App 439, 442; 805 NW2d 460 (2011). Because plaintiff did not raise these claims below, they are unpreserved. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993); *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). An unpreserved constitutional issue is subject to plain error review. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under plain error review, reversal is warranted only

if the defendant can establish the following: (1) an error occurred; (2) that error was plain; and (3) that error affected the defendant's substantial rights. *Id.* at 763. "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.*

Additionally, this Court reviews a trial court's decision to hold a party in contempt for an abuse of discretion. *In re Contempt of Auto Club Ins Ass'n*, 243 Mich App 697, 714; 624 NW2d 443 (2000). An abuse of discretion occurs if the trial court's decision results in an outcome outside the range of principled outcomes. *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009). To the extent this Court's review of the trial court's contempt decision involves a question of law, this Court's review is de novo. *Id*. at 714.

## III. ANALYSIS

On appeal, plaintiff asserts the trial court deprived him of due process and his freedom of speech when it held him in criminal contempt. We disagree.

Contempt of court encompasses willful acts, omissions, or statements that tend to impair the authority or impede the functioning of a court. *In re Contempt of Dudzinski*, 257 Mich App 96, 108; 667 NW2d 68 (2003); *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). "Courts have inherent independent authority, as well as statutory authority, to punish a person for contempt." *Robertson*, 209 Mich App at 436; see also MCL 600.1701(a).[1] Courts have contempt authority to sustain their power and preserve their effectiveness. *Dudzinski*, 257 Mich App at 108. When necessary to restore order in the courtroom, or to ensure respect for the judicial process, a court is within its authority to hold a party or individual in contempt. *Id*. at 108-109.

Contempt of court can be of either a civil or criminal nature depending on the court's purpose in exercising its contempt power. *Auto Club Ins Ass'n*, 243 Mich App at 711. The distinction between civil and criminal contempt is important because due process demands more procedural safeguards in criminal contempt proceedings than civil contempt proceedings. *Porter v Porter*, 285 Mich App 450, 456-457; 776 NW2d 377 (2009). When the court holds a party in contempt to punish that party for "past conduct that affront's the court's dignity," the court holds the party in criminal, rather than civil, contempt. *Auto Club Ins Ass'n*, 243 Mich App at 713; *In re Contempt of Rochlin*, 186 Mich App 639, 644-648; 465 NW2d 388 (1990).

---

[1] Relevant to this case, MCL 600.1701(a) states:

> The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:
>
> (a) Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority.

In this case, because the trial court sought to punish plaintiff for the completed conduct of his disrespectful comments to the trial court, the trial court held plaintiff in criminal contempt. Thus, plaintiff argues that because the trial court held him in criminal contempt, he was entitled to the due process safeguards afforded in a criminal trial, such as being notified of the charges against him and holding a hearing. This argument lacks merit.

The Fourteenth Amendment states: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." US Const, Am XIV. In criminal contempt proceedings for contemptuous conduct that occurred outside the view of the trial court, due process requires a presumption of innocence, the right against self-incrimination, and the contempt to be proven guilty beyond a reasonable doubt. *Porter*, 285 Mich App at 456-457. The accused must be "informed not only whether the contempt proceedings are civil or criminal, but also the specific offenses with which he or she is charged." *DeGeorge v Warheit*, 276 Mich App 587, 592; 741 NW2d 384 (2007). Additionally, "the accused in a contempt proceeding is entitled to be given time to prepare a defense, secure the assistance of counsel, and produce witnesses on his or her behalf." *Id*. at 593.

However, when an individual's contemptuous behavior occurs in immediate view of the court, the court may, consistent with notions of due process, summarily try and punish the contemptuous party. *Auto Club Ins Ass'n*, 243 Mich App at 712-713; see also *Taylor v Hayes*, 418 US 488, 497; 94 S Ct 2697; 41 L Ed 2d 897 (1974). Because plaintiff's contemptuous behavior occurred in the presence of the trial court, the trial court's decision to summarily charge and sentence plaintiff did not deprive him of due process.

In relation to his due process claim, plaintiff also argues the trial court erred by failing to make findings of fact on the record in accordance with MCR 2.517(A). We disagree.

In relevant part, MCR 2.517(A) states:

> (1) In actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment.

> (2) Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts.

"Findings of fact regarding matters contested at a bench trial are sufficient if they are '[b]rief, definite, and pertinent,' and it appears that the trial court was aware of the issues in the case and correctly applied the law, and where appellate review would not be facilitated by requiring further explanation." *Triple E Produce Corp v Mastronardi Produce, Ltd*, 209 Mich App 165, 176; 530 NW2d 772 (1995) (citations omitted).

We find no error in the trial court's findings. Assuming for the sake of plaintiff's argument that MCR 2.517(A) applies when a trial court summarily charges and sentences in a contempt proceeding, the trial court satisfied the requirements of this rule. Although the trial court did not explicitly state it was holding plaintiff in contempt because of his disrespectful and disruptive behavior, the trial court clearly implied this behavior was the basis for holding plaintiff in contempt. After plaintiff continued to insult the trial court, the trial court warned: "Sir, do you

want to be held in contempt of Court?" This was a clear warning that plaintiff's decision to continue to disrespect the trial court would lead to contempt. Instead of heeding this warning, plaintiff responded: "I don't care." The trial court then stated:

> Okay. What we will do is—what the Court is going to do is hold you in contempt of Court. The Court will sentence you, in this particular matter, on a summary fashion. The contempt of Court happening within the immediate view of the Court. The Court will, in fact, impose a seven-day jail sentence for your contempt of Court, in this matter.

Though brief, the trial court's statements leave no doubt as to why it was holding plaintiff in contempt of court. MCR 2.517(A)(2) requires no more than "[b]rief, definite, and pertinent" findings of fact, and appellate review would not be facilitated by further explanation, see *Triple E Produce Corp*, 209 Mich App at 176. Accordingly, we conclude the trial court did not abuse its discretion when it held plaintiff in contempt.

Next, plaintiff argues that the trial court erred as a matter of law because it held him in contempt even though he violated no court order. This argument is also meritless.

As a preliminary matter, plaintiff offers no authority standing for the proposition that a trial court can hold an individual in contempt only if the individual violates an order of the court. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Movie Mania Metro, Inc v GZ DVD's Inc*, 306 Mich App 594, 605-606; 857 NW2d 677 (2014), quoting *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). As a result, plaintiff has abandoned his argument as to this claim of error. See *Movie Mania Metro, Inc*, 306 Mich App at 606.

Even if not abandoned, MCL 600.1701(a) specifically allows a trial court to hold an individual in contempt for behavior occurring in its immediate view and presence. MCL 600.1701(a) states:

> The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:

> (a) Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings or impair the respect due to its authority.

As such, there is no requirement that a holding of contempt requires violation of a court order.

Plaintiff also argues that the trial court erred by finding that his conduct was willful. "In a criminal contempt proceeding, a willful disregard or disobedience of a court order must be clearly and unequivocally shown . . . ." *DeGeorge*, 276 Mich App at 592. Here, plaintiff plainly engaged in willful disregard of the trial court's authority. Plaintiff repeatedly interrupted opposing counsel and the trial court, and repeatedly made disrespectful remarks to the trial court. The trial court did

not err in determining that plaintiff's actions were the product of his "willful disregard or disobedience."

In his last point on appeal, plaintiff argues the trial court's decision to hold him in contempt constituted a content-based restriction on his speech. We disagree.

The First Amendment of the United States Constitution states: "Congress shall make no law . . . abridging the freedom of speech . . . ." US Const, Am I. Similarly, the Michigan Constitution states: "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5. Because "[t]he rights of free speech under the Michigan and federal constitutions are coterminous . . . federal authority construing the First Amendment may be considered in interpreting Michigan's guarantee of free speech." *Dudzinski*, 257 Mich App at 100 (citations omitted).

The freedom of speech is not absolute. *Id*., citing *Chaplinsky v New Hampshire*, 315 US 568, 571-572; 62 S Ct 766; 86 L Ed 1031 (1942). Whether, and to what extent, the government may regulate speech depends on whether the government regulation at issue is content neutral. *Turner Broadcast Sys, Inc v FCC*, 512 US 622, 642; 114 S Ct 2445; 129 L Ed 2d 497 (1994). Government "regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny . . . ." *Id*. (citations omitted). Hence, content neutral regulations are valid if they "are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Ed Ass'n v Perry Local Educators' Ass'n*, 460 US 37, 45; 103 S Ct 948; 74 L Ed 2d 794 (1983) (citations omitted). If a regulation is content based, however, the regulation is subject to "rigorous scrutiny." *Turner Broad Sys, Inc*, 512 US at 642. To be valid, the regulation must be "necessary to serve a compelling state interest and . . . narrowly drawn to achieve that end." *Dudzinski*, 257 Mich App at 101.

This Court has indicated the government has a compelling interest in restricting speech that "constitutes an imminent threat to the administration of justice" or that "tends to impede or disturb the administration of justice." *Dudzinski*, 257 Mich App at 101-102 (quotation marks and citations omitted).[2] In *Dudzinski*, a spectator at a pretrial settlement hearing in a case involving a police shooting wore a shirt with the printing: "Kourts Kops Krooks." *Dudzinski*, 257 Mich App at 97-98 n 1. The spectator refused to change his shirt, and the trial court held him in contempt. *Id*. at 98. This Court found the trial court's contempt order violated the spectator's freedom of speech. *Id*. at 102. Noting that the spectator was not loud and disruptive, there was no jury present when the spectator was wearing his shirt, and only he and two other spectators were wearing the shirt, this Court concluded the spectator did not pose an imminent threat to the administration of justice. *Id*. at 106-107.

---

[2] This Court has stated: " 'Disruptive, contemptuous behavior in a courtroom' " does not fall under the purview of the First Amendment. *Dudzinski*, 257 Mich App at 103, quoting *In re Contempt of Warriner*, 113 Mich App 549, 555; 317 NW2d 681 (1982), remanded on other grounds, 417 Mich 1000 (1983) (citation omitted).

Plaintiff argues that his disrespectful behavior did not constitute an imminent threat to the administration of justice because: (a) the hearing was only 12 minutes long, (b) there was no jury present during his outburst, and (c) the trial court ultimately ruled in favor of DL Welding. This argument is unpersuasive.

Regardless of whether there was a jury, the length of the hearing, and the trial court's ultimate ruling, unlike in *Dudzinski*, plaintiff's conduct and speech disrupted the hearing. Plaintiff repeatedly interrupted opposing counsel and the trial court. Rather than address the matters at issue—whether plaintiff could represent the LLC and DL Welding's motion to quash—plaintiff repeatedly disparaged the trial court. None of the disrespectful comments were relevant to the legal issues being discussed, and plaintiff's conduct served only to obstruct the trial court from carrying out its duties. As this Court has stated, the judiciary has a compelling interest in restricting such behavior in the courtroom. *Dudzinski*, 257 Mich App at 101-102. And considering plaintiff continued behaving contemptuously even after the trial court attempted to redirect him, holding plaintiff in contempt was the least restrictive means to satisfy this interest.[3]

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Brock A. Swartzle

---

[3] Because remand is unnecessary, we need not address plaintiff's argument that remand before a different judge is warranted.