*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CYNDI TILLER, Individually and as Personal
Representative of the ESTATE OF GERALD
TILLER,

UNPUBLISHED
February 15, 2024

Plaintiff-Appellee,

v

No. 365225
Lenawee Circuit Court
LC No. 2019-006323-CZ

MICHAEL TILLER and CARRIE TILLER,

Defendants-Appellants.

Before: K. F. KELLY, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

In this dispute over title to real property, defendants Michael Tiller and Carrie Tiller (collectively, defendants) appeal as of right the order of the trial court finding them in contempt and assessing a fine, attorney fees, and costs. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This dispute involves a parcel of property in Morenci, Michigan (the Morenci property) that Michael and his twin brother Gerald Tiller originally owned as joint tenants with full rights of survivorship. Carrie is Michael's spouse, and plaintiff Cyndi Tiller is Gerald's spouse. In 1983, Gerald and Michael started a business together. Their partnership later expanded to include several jointly-owned properties and businesses, including Versacut Industries, Inc. (Versacut), a tenant on the Morenci property. Their relationship broke down in 1998, which led to litigation to dissolve their partnership and distribute their properties. The parties reached a negotiated resolution that they memorialized in a settlement agreement filed in Monroe County in 2001, and in a consent judgment filed in Lenawee County in 2003 in LC No. 2002-002882-CK.

Gerald died in December 2018. In late July 2019, Cyndi, individually and as the personal representative of Gerald's estate, sued Michael and Carrie in this case, LC No. 2019-006323-CZ, to quiet title to the Morenci property, arguing that the property was owned by her and Gerald's

estate and by defendants as tenants in common.[1] In early August 2019, Cyndi moved for a temporary restraining order and a preliminary injunction, alleging that defendants demanded that Versacut, which was still owned by Cyndi and Chris Tiller, vacate the Morenci property by mid-August 2019, and wrongfully asserted control over a joint account held equally by Cyndi and defendants. Cyndi sought to restrain defendants from transferring ownership of or encumbering the Morenci property, evicting any tenant (including Versacut) from the Morenci property, and transferring money out of the joint account. On August 5, 2019, the trial court issued a preliminary injunction granting Cyndi's requested relief.

In late August 2019, defendants filed counterclaims for slander of title, abuse of process, and breach of contract. In early October 2019, the trial court extended the temporary restraining order. It also ordered the two tenants of the Morenci property, including Versacut, to deposit half of their rent payments in an escrow account at the Demorest Law Firm, PLLC, until further notice, and pay the other half of the lease payments to defendants. The court also barred defendants from entering Versacut's business without 48 hours' written notice to Cyndi.[2]

Litigation continued in this case between November 2019 and December 2020, including competing motions for summary disposition (both of which were denied in March 2020) and an earlier motion from Cyndi to hold defendants in contempt (separate from the contempt motion at issue on appeal). In mid-December 2020, defendants moved for summary disposition of Cyndi's claims. Cyndi responded in late January 2021. On March 25, 2021, the trial court entered an opinion and order granting defendants' motion for summary disposition and dismissing all of Cyndi's claims.[3] The order indicated it was "a final order that close[d] the case." It ordered all funds held in escrow pursuant to the restraining order or preliminary injunction paid to defendants, and dissolved all prior restraining orders and preliminary injunctions. On March 31, 2021, defendants moved to release the funds in escrow. On April 1, 2021, prior to the court's ruling on their motion to release funds, defendants conveyed the Morenci property to their son. Defendants continued requesting expenses related to the Morenci property after they transferred it to their son for at least September through December 2021. They did not notify Cyndi or the trial court of the transfer. On April 2, 2021, Cyndi moved to stay the March 25, 2021 order pending an appeal.

On April 15, 2021, the trial court entered an order staying enforcement of the March 25 order and denying defendants' motion for release of the escrow funds. On May 14, 2021, the trial

---

[1] Cyndi raised nine claims in her complaint: (1) quiet title; (2) deed reformation; (3) specific performance; (4) breach of contract; (5) unjust enrichment; (6) imposition of a constructive trust; (7) equitable estoppel; (8) fraud; and (9) conversion.

[2] In late November 2019, the court extended terms of August 2019 and October 2019 orders, but reduced the notice for entry into Versacut to 24 hours.

[3] Cyndi submitted her first amended complaint on March 16, 2021. Her amended complaint omitted her claims for deed reformation, specific performance, equitable estoppel, and conversion. The court appears to not have accepted the first amended complaint for filing until the same day that the trial court granted summary disposition in defendants' favor.

court amended its March 25, 2021 opinion and order to state that it was not a final order because defendants' counterclaims had not yet been resolved.

While the parties litigated this case (including a motion from defendants seeking to hold Cyndi in contempt not relevant to the issues on appeal), Cyndi and Versacut, in January 2020, moved to enforce the 2003 consent judgment in LC No. 2002-002882-CK, seeking to compel Carrie and Michael to execute a deed to convey 50% of the Morenci property to Carrie and Michael and 50% to the Estate of Gerald Tiller as tenants in common, in accordance with the consent judgment. The trial court granted that motion in early October 2021, and defendants appealed that order to this Court in Docket No. 360703. The parties stipulated to stay this case pending the outcome of that appeal. This Court reversed the trial court's order, holding that the 2003 consent judgment was ambiguous with regard to its application to the Morenci property and that laches barred Cyndi and Versacut's 2020 motion to enforce the consent judgment. *Tiller v Versacut Indus, Inc*, unpublished per curiam opinion of the Court of Appeals, issued July 20, 2023 (Docket No. 360703), pp 6-9, lv pending.

At some point, Cyndi discovered that defendants had transferred the Morenci property to their son. Thereafter, in late February 2022, Cyndi moved in this case for an order to hold defendants in contempt for violating the trial court's orders. Cyndi reasoned that the trial court's November 2019 preliminary injunction prohibited defendants from transferring ownership of the Morenci property and that because the case was still active, the injunction was still in effect.

In late March 2022, the trial court held a hearing on Cyndi's contempt motion. At the time, attorney Peter Brown represented defendants. The court found that defendants' transfer of the Morenci property to their son did not violate a court order because the preliminary injunction prohibiting transfer of the property was not in effect on the date of the transfer. It did, however, find it "appropriate to enter an Order to Show Cause" for the request for expenses incurred after April 1, 2021. The record reflects that trial court never entered any such order.

In mid-July 2022, citing a breakdown in the attorney-client relationship, Brown moved to withdraw as defendants' attorney. The trial court granted the motion to withdraw in mid-August 2022. It then held a show-cause hearing in mid-October 2022 to determine whether defendants should be held in contempt for requesting reimbursement of expenses from escrow after they transferred ownership of the Morenci property. At the show-cause hearing, defendants appeared without counsel and Cyndi's attorney, Mark Demorest, questioned them under oath. They admitted transferring the property to their son and never informing the court or Demorest's firm of the transfer. After their testimony, the trial court stated it was finding defendants in civil contempt for violating the escrow order by requesting reimbursement of expenses from an escrow account after they transferred the property and were no longer owners, and by continuing to hold themselves out as owners of the Morenci property entitled to reimbursement of expenses from the escrow account. It imposed a $500 fine and awarded Cyndi attorney fees incurred while litigating the expense-reimbursement issue for the period after defendants conveyed the Morenci property to their son. Defendants unsuccessfully moved for reconsideration, and this appeal followed.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision to hold a party in contempt. *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 665; 997 NW2d 511 (2022). This standard "recognizes that there may not be a single correct outcome," so if the trial court chooses a "reasonable and principled outcome," we "must defer to the trial court's judgment." *Id*. at 665-666 (quotation marks and citation omitted). We review de novo any questions of law related to the contempt order, including whether a party has been afforded due process. *Id*. at 666. But we review for clear error any factual findings supporting a contempt order and must affirm those findings if competent evidence supports them. *Id*. Clear error exists when we are definitely and firmly convinced the trial court made a mistake. *Id*. We may not, however, "weigh the evidence or the credibility of the witnesses" in determining whether competent evidence supports those findings. *Id*.

### III. CONTEMPT

Defendants argue that the trial court erred when it failed to follow proper procedures for holding them in contempt. We agree.

"Contempt of court is a willful act, omission, or statement that tends to impair" a court's authority or impedes its functioning. *In re Contempt of Robertson*, 209 Mich App 433, 436; 531 NW2d 763 (1995). The violation may be merely neglectful rather than necessarily willful. *In re Contempt of United Stationers Supply Co*, 239 Mich App 496, 501; 608 NW2d 105 (2000). "Courts have inherent independent authority, as well as statutory authority, to punish a person for contempt." *In re Contempt of Robertson*, 209 Mich App at 436, citing MCL 600.1701 *et seq*. Critical here, a trial court must "carry out the proper procedures before it can issue an order holding a party or individual in contempt of court." *In re Moroun*, 295 Mich App 312, 330; 814 NW2d 319 (2012).

Cyndi asked the trial court to hold defendants in contempt because, according to her, they violated the preliminary injunction by transferring ownership of the Morenci property to their son and by failing to disclose the transfer to Cyndi or the court. She further asserted that, as a result of defendants' failure to disclose the transfer, defendants had been continuously making misrepresentations to the trial court since at least May 2021, when they continued to request reimbursement of expenses paid for the Morenci property. At the hearing on Cyndi's motion, the trial court found that defendants did not violate any court order when they transferred the property to their son on April 1, 2021, because, at the time of the transfer, all prior restraining orders and preliminary injunctions had been dissolved by the court's March 25, 2021 order. The court stated, however, that "it is appropriate to enter an Order to Show Cause for the request for expenses that were incurred after – after April 1, 2021, when [defendants] were no longer owners of the Morenci property." The trial court did not believe that defendants were entitled to the requested expense reimbursements because they no longer owned the property and because the property was out of the trial court's reach as a result of the transfer.

Defendants argue that the trial court failed to follow proper procedures before finding them in contempt. We agree. But to address that issue, we must first determine whether the trial court held defendants in civil or criminal contempt. Though the trial court stated that it was holding defendants in civil contempt, a court's label of the contempt is not dispositive. *In re Contempt of Pavlos-Hackney*, 343 Mich App at 671, citing *In re Contempt of Auto Club Ins Ass'n*, 243 Mich

-4-

App 697, 714-716; 624 NW2d 443 (2000) (*In re Contempt of ACIA*). What matters is "[t]he court's purpose in exercising its contempt powers"; it is "not the nature of the contemptuous conduct" that "defines which of the two contempt power the court actually uses," but whether the court seeks to coerce or punish. *In re Contempt of ACIA*, 243 Mich App at 711. The type of contempt is important because a criminal contempt proceeding "requires some, but not all, of the due process safeguards of an ordinary criminal trial." *In re Contempt of Pavlos-Hackney*, 343 Mich App at 670-671 (quotation marks, citation, and ellipses omitted). "[A] party accused of criminal contempt must [therefore] be informed of the nature of the charge against him or her and be given adequate opportunity to prepare a defense and to secure the assistance of counsel." *Porter v Porter*, 285 Mich App 450, 456; 776 NW2d 377 (2009) (quotations marks, citation, and ellipses omitted). In contrast, a party accused of civil contempt "must be accorded rudimentary due process, i.e., notice and an opportunity to present a defense, and the party seeking enforcement of the court's order bears the burden of proving by a preponderance of the evidence that the order was violated." *Id*. at 457.

At the most basic level, civil and criminal contempt differ in the functions and goals: civil contempt seeks to coerce compliance; criminal contempt is punitive. *Porter*, 285 Mich App at 455. In civil contempt proceedings, a court "employs its contempt power to coerce compliance with a present or future obligation, including compliance with a court order, to reimburse the complainant for costs incurred as a result of contemptuous behavior, or both." *In re Moroun*, 295 Mich App at 330. See also *Porter*, 285 Mich App at 455. "If the contempt consists in the refusal of a party to do something which he is ordered to do for the benefit or advantage of the opposite party, the process is civil." *Porter*, 285 Mich App at 456 (quotation marks and citation omitted). In such a case, the order "is not in the nature of a punishment, but is coercive, to compel him to act in accordance with the order of the court." *Id*. (quotation marks and citations omitted). "Civil contempt proceedings seek compliance through the imposition of sanctions of indefinite duration, terminable upon the contemnor's compliance or inability to comply." *In re Moroun*, 295 Mich App at 330 (quotation marks and citation omitted).

"Criminal contempt differs from civil contempt in that the sanctions are punitive rather than remedial," and is "intended to punish the contemnor for past conduct that affronts the dignity of the court." *Porter*, 285 Mich App at 455 (quotation marks and citation omitted). So, "when a court exercises its criminal contempt power it is not attempting to force the contemnor to comply with an order, but is simply punishing the contemnor for past misconduct that was an affront to the court's dignity." *Id*. (citation omitted).

Here, although the trial court stated that it was holding defendants in civil contempt, it did not seek to coerce defendants to comply with a court order. The court instead acted to punish defendants for past misconduct that offended the court's dignity and undermined its authority: misleading it about their status as owners of the Morenci property to seek reimbursement. The trial court specifically found that defendants' transfer of the property to their son did not itself violate an order. It found, however, that defendants "misused" its authority when they held themselves out as owners of the Morenci property to seek expenses from the escrow account after they conveyed the property to their son. The distinctions between civil and criminal contempt make it apparent that the trial court intended to hold defendants in criminal contempt, not civil. *In re Contempt of ACIA*, 243 Mich App at 715.

Criminal contempt requires additional procedural protections for those accused of contemptuous conduct. Beyond being informed of the nature of the charges and afforded an adequate opportunity to secure the assistance of counsel, *Porter*, 285 Mich App at 456, a person accused of criminal contempt is also "entitled to the presumption of innocence, protection from compelled self-incrimination, an adequate opportunity to prepare and present a defense, and a right to have the contempt proved beyond a reasonable doubt," *In re Contempt of Pavlos-Hackney*, 343 Mich App at 671 (providing the necessary procedures for indirect criminal contempt). The court's order to show cause must also be based on "a proper showing on ex parte motion supported by affidavits." *In re Contempt of ACIA*, 243 Mich App at 714. A criminal contemnor is also "entitled to be informed not only whether the contempt proceedings filed against him are civil or criminal, but also the specific offenses with which he is charged." *In re Contempt of Rochlin*, 186 Mich App 639, 649; 465 NW2d 388 (1991).

Contempt may be direct or indirect. Direct contempt occurs in the presence of the court. *In re Contempt of Robertson*, 209 Mich App at 437-438. A trial court need not hold a separate hearing regarding direct contempt because the court has direct knowledge of the conduct, and direct contempt requires immediate action through summary proceedings. See *In re Contempt of ACIA*, 243 Mich App at 712. But "[i]f the contemptuous conduct occurs outside the court's direct view," it is "indirect contempt" and "the court must hold a hearing to determine whether the alleged contemnor actually committed contempt." *Id.* at 712-713. "Indirect contempt is subject to the specific procedures outlined in MCR 3.606." *Id*. at 714. MCR 3.606(A), which governs the initiation of contempt proceedings for conduct occurring outside the immediate presence of the court, states:

> For a contempt committed outside the immediate view and presence of the court, on a proper showing on ex parte motion supported by affidavits, the court shall either
>
> (1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or
>
> (2) issue a bench warrant for the arrest of the person.

Cyndi initiated the contempt proceedings when she filed her motion to hold defendants in contempt. Attached to the motion was the affidavit of Derek R. Mullins, one of Cyndi's attorneys. Mullins stated that defendants admitted transferring ownership of the Morenci property to their son, which Mullins asserted violated the preliminary injunction and warranted defendants being "held in civil and criminal contempt." Mullins also asserted that defendants failed to inform the trial court or Cyndi of the transfer and had been making misrepresentations to the court regarding ownership of the property since May 2021. Mullins averred that Cyndi had incurred significant time and expense litigating defendants' repeated requests for expenses. In particular, Mullins indicated that based on defendants' representations, he authorized the disbursement of $4,476.02 and $1,651.68 to defendants' counsel in September 2021 and January 2022, respectively, for expenses related to the Morenci property that defendants no longer owned.

After a hearing on Cyndi's motion, the trial court ruled that defendants' transfer of the Morenci property did not violate any court order because the March 25, 2021 order dissolved all

restraining orders and preliminary injunctions. The court also noted that although it had stayed enforcement of the March 25 order, an injunction was not in effect on April 1, 2021, when defendants transferred the property to their son. The trial court found, however, that defendants' requests for reimbursement of expenses for the Morenci property after April 1, 2021, supported an order to show cause. Though the court stated it would "issue an Order to Show Cause on that issue," no such order appears in the record and neither party has referenced any such order on appeal. Thus, it is apparent that the trial court never issued an order to show cause as required by MCR 3.606(A)(1). Remand is appropriate where the appellant's contempt proceeding was not initiated properly and the appellant did not waive the requirements of MCR 3.606. See *In re Barnett*, 233 Mich App 188, 193; 592 NW2d 431 (1998).

In addition to the improperly initiated show-cause hearing, the trial court did not advise defendants of their right to secure counsel for the criminal contempt proceeding. See *In re Contempt of Pavlos-Hackney*, 343 Mich App at 671. In mid-August 2022, the trial court granted defendants' counsel's motion to withdraw and defendants appeared at the October 2022 show-cause hearing without counsel. The trial court also erroneously informed defendants that the charges filed against them were civil, thereby depriving them of substantial safeguards afforded to alleged criminal contemnors. See *id*. at 670-671. And according to Michael, he and Carrie went "to Court with not knowing anything we're charged with." See *Porter*, 285 Mich App at 456 (requiring that a party charged with criminal contempt be informed of the charges against them). These inadequacies, among others,[4] denied defendants due process to which they were entitled.

In sum, the form of contempt imposed is critical to the procedural safeguards afforded to alleged contemnors. Here, the contempt against defendants was criminal, not civil, because the court sought to punish them for their past misconduct of misusing its authority when they represented themselves as the owners of the Morenci property and requested reimbursement for expenses, despite having transferred the property to their son. Because the contempt was criminal, defendants were entitled to more procedural protections than they received. They had the right to be informed of the nature of the charges against them and to have the contempt proved beyond a reasonable doubt, afforded an adequate chance to secure the assistance of counsel, and to prepare and present a defense, and were entitled to the presumption of innocence and protection from compelled self-incrimination. See *Porter*, 285 Mich App at 456; *In re Contempt of Pavlos-Hackney*, 343 Mich App at 671.

---

[4] We observe that by proceeding with the contempt hearing on the erroneous presumption that this was civil contempt, not criminal, the trial court neglected many of the procedural safeguards required for indirect criminal contempt proceedings. This includes advising a defendant of the charge, the potential penalties, their right to counsel, and various other trial rights. *Porter*, 285 Mich App at 456; *In re Contempt of Pavlos-Hackney*, 343 Mich App at 671. Without such advice of rights, it would be impossible for defendants to make a knowing, understanding, and voluntary waiver of the procedural safeguards. Nonetheless we resolve this case on the most obvious omission: the right to counsel.

On remand, the trial court should consider whether indirect criminal contempt proceedings are necessary in light of developments in the other case, LC No. 2002-002882-CK.  If so, it must provide the required procedural protections outlined in this opinion, the court rules, and the contempt statute.

We reverse and remand for further proceedings consistent with this opinion.[5]  We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Noah P. Hood

---

[5] In light of this decision, we need not address defendants' remaining issues on appeal.