*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMY JO EBY,

        Plaintiff-Appellant,

v

DAVID BENJAMIN EBY,

        Defendant-Appellee.

UNPUBLISHED
October 26, 2023

No. 364709
Branch Circuit Court
LC No. 2020-040205-DM

Before: RICK, P.J., and SHAPIRO and YATES, JJ.

PER CURIAM.

Plaintiff mother appeals of right from a judgment of divorce (JOD) challenging the trial court's determination (1) regarding custody of the parties' minor child; (2) whether plaintiff was entitled to attorney fees under MCR 3.206(D)(2)(b); and (3) whether, on remand, the case should be assigned to a different judge. For the reasons stated in this opinion, we reverse the trial court's determination of physical custody and attorney fees, and remand for a new child custody determination and for the trial court to consider plaintiff's request for attorney fees under MCR 3.206(D)(2)(b). Assignment to a different judge is not warranted.

## I. BACKGROUND

The parties first met in elementary school. They reconnected on Facebook in 2008. Plaintiff lived in Florida at the time, while defendant father lived in Michigan. Plaintiff moved to Michigan in Spring 2009. The parties married in September 2009, and had one child together. By 2015, the marriage was troubled, and in 2019, the parties began a divorce action. In September of that year, the divorce action was changed to a custody action, and the parties signed a "Consent Order for Custody." Among other things, the parties agreed that they would continue to live in the same house and would share legal and physical custody of the minor child. They also agreed that neither party would do anything that might estrange the child from the other parent or interfere with the child's relationship with the other parent, including speaking ill of the other party or the party's family and friends and engaging in alienating behaviors. Unfortunately, the consent order did not have the intended effect.

-1-

Plaintiff filed a complaint for divorce in 2020, and defendant counterclaimed for divorce. At the same time she filed the divorce complaint, plaintiff also moved ex parte for temporary child custody, parenting time, exclusive use of the marital home, and a psychological evaluation for defendant. Plaintiff alleged that, contrary to the 2019 consent order, defendant had continued to engage in patterns of domestic abuse against plaintiff and alienate the minor child from her. The trial court denied the ex parte petition.

The parties agreed to consult a forensic professional regarding parental alienation. Eventually, they selected Siri Gottlieb, J.D., LMSW, to conduct an evaluation regarding parental alienation and parental estrangement, to prepare a report of her findings, and to make recommendations to the trial court. After completing her evaluation, Gottlieb concluded, in part, that "[b]oth parents have significant deficits in their reality testing and ability to control their impulses. Both have drawn [the child] into the middle of their conflict. Both have exercised poor judgment and flawed parenting." As to defendant, Gottlieb found that despite the benefits of counseling, defendant remained "domineering, controlling, unkind and vindictive." Defendant's behaviors "pulled [the minor child] from [plaintiff] and [were] the equivalent of emotional abuse and family violence." Gottlieb concluded that plaintiff displayed occasional "distortions of reality, to which she has a big emotional response," and that she "misinterprets comments and events and makes incorrect assumptions not based in fact or reality." Gottlieb further noted that plaintiff was critical of the child, but her criticism resulted partly from her own abusive upbringing and reactive nature, and from defendant's "failure to set appropriate behavioral limits with [the child] and to his attempts to turn [the child] against [plaintiff]." The combination of plaintiff's and defendant's "individual personality issues ha[d] resulted in an extraordinary level of toxicity in the home." To "restore a mutually trusting and positive relationship" between plaintiff and the child, Gottlieb recommended that the trial court order defendant to vacate the home immediately, stop all communications with the child, and pay $15,000 for plaintiff and the child to attend an intensive, four-day reunification program called Turning Points for Families (TPFF).

The trial court held an evidentiary hearing over five days between March 2022, and December 2022. The primary witnesses at trial were Gottlieb, who read large portions of her report into the record, plaintiff, and defendant. Plaintiff testified that defendant constantly belittled her, called her names, and made false accusations against her in front of the minor child, thereby causing the child to adopt defendant's hateful and insulting attitude toward her. Plaintiff said that the minor child was aligned with defendant, did everything that he said, repeated his habits, and treated plaintiff in the same hateful way that defendant did. Plaintiff testified that defendant allowed and encouraged the child not to do anything that plaintiff asked, and he allowed the child to be "rude and disrespectful" to plaintiff. In addition, defendant withheld the child from plaintiff by taking the child to his mother's house and threatening plaintiff with arrest if she went to the house to pick up the child.

Defendant admitted that he did not always respond appropriately to plaintiff and that he called plaintiff names during fights. However, he did not think that he referred to plaintiff in derogatory terms when talking to the child. He acknowledged that, when he felt backed into a corner, he would "punch with [his] words," i.e., he would say nasty things to get out of the situation. Defendant testified that he has been a stay-at-home parent since 2016 and had been the child's primary caregiver for the six or seven years preceding the hearing. He got her up for school, packed her lunches, took her to school, cooked her dinner, and helped her with homework. He

and the child talked about all manner of things, such as the child's crushes, a school dance that she helped organize, bullies, grades, and music. Defendant said that plaintiff was home for dinner 25% of the time, but she ate her meals in her room. Defendant also said that plaintiff spent most weekends with her friends and that she was very critical of the child, the child's friends, and the child's manner of dress. Defendant acknowledged that plaintiff made all of the child's medical and dental appointments.

Ruling from the bench, the trial court determined, relative to custody, that the child had an established custodial environment (ECE) with defendant, and that any changes to the ECE could only be made on clear and convincing evidence that the change was in the child's best interests. Plaintiff has not challenged this ruling. Turning to the best-interest factors, the trial court adopted the "law," "logic," and "rationale" of defendant's pretrial brief as the ruling of the court with regard to best-interest factors (a) (emotional ties); (b) (capacity and disposition for love, affection, guidance, to continue religious education, if any); (c) (capacity and disposition to provide food, clothing, medical care, and other material needs); (d) (length of time in a stable, satisfactory environment); (e) (permanence of family unit); (h) (home, school, community record); (i) (preference of child); and (j) (willingness of each parent to facilitate parent-child relationship with the other parent). It found that all these factors favored defendant, except for factor (d), which favored neither party. The court adopted the "factual aspect presented by defendant" in factor (*l*) (any other relevant factor), but added that the potential for alienation would also be considered under this factor. However, the court did not find this to be a case of parental alienation. Rather, the court concluded that the combination of both parties' individual characteristics resulted in a "co-equal toxicity." The trial court disagreed with defendant's pretrial brief on factors (f) (moral fitness), (g) (mental and physical health), and (k) (domestic violence), concluding that the parties were equal with regard to these factors.

The trial court awarded the parties joint legal custody of the child and awarded defendant primary physical custody. However, the court directed that plaintiff would have exclusive use of the marital home until February 1, 2023, during which time the child would remain with plaintiff, and defendant would have standard parenting time. The court did this so that plaintiff could "become reacquainted with her daughter the best she can" before defendant's primary physical custody of the child began. The trial court entered a JOD that stated, in relevant part, that "after plaintiff's period of exclusive use of the marital home, the court can make determinations if therapeutic counseling or co-parenting counseling is needed." The trial court concluded that each party would be responsible for their own attorney fees. Plaintiff now appeals.

## II. CUSTODY

### A. PARENT ALIENATION

Plaintiff first argues that the trial court's conclusion this was not a case of parental alienation requiring immediate intervention was against the great weight of the evidence and, therefore, the trial court abused its discretion by awarding defendant primary physical custody of the child. Plaintiff contends that the trial court erred by relying on its own Internet research,

critiquing Gottlieb's report rather than simply taking her testimony at face value, and failing to consider parental alienation when analyzing several of the best-interest factors. We disagree.[1]

To begin, plaintiff has not established that the trial court impermissibly relied on its own Internet research. "A court must base its decision on testimony given in open court, not extrajudicial information." *Gubin v Lodisev*, 197 Mich App 84, 86; 494 NW2d 782 (1992). In the present case, the record shows that the trial judge consulted the Internet during the testimony of the founder of TPFF. Assuming, without deciding, that it was improper for the trial court to conduct Internet research on a key issue, it appears to us that the error was harmless. The information that the trial court discovered on the Internet, i.e., that the "theory of parental alienation has been debunked and rejected by credible organizations such as the American Psychological Association, the American Medical Association, and . . . the World Health Organization[,]" was consistent with the later testimony of defendant's counselor, who testified as an expert witness. In addition, the trial court shared the information that he found with the founder of TPFF and gave her an opportunity to respond. Further, as discussed later, the trial court's close analysis of Gottlieb's report during his ruling from the bench demonstrated that the basis for the trial court's decision regarding parental alienation was his own determination of the credibility of the parties. Under these circumstances, the trial court's improper access of the Internet during trial was harmless error. See MCR 2.613(A).

Plaintiff also contends that, rather than scrutinize Gottlieb's report to determine which party was most at fault, the trial court should have taken Gottlieb's testimony at face value. Plaintiff cites no authority obligating a trial court to accept an expert's testimony at face value. The purpose of expert testimony is to "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." See MRE 702. Further, plaintiff's challenge is primarily an attack on the trial court's credibility determination, which differed from Gottlieb's, and the weight it assigned to Gottlieb's conclusions and recommendation. In our view, the purpose of the trial court's analysis of Gottlieb's report was to demonstrate that evidence in Gottlieb's own report and testimony supported the trial court's rejection of her credibility determination, conclusions, and recommendation. The court noted, for example, that despite finding plaintiff credible, Gottlieb referred in her report and in her testimony to characteristics of plaintiff that contradicted this credibility determination. In light of these contradictions, and on the basis of its own credibility

---

[1] "All custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue." MCL 722.28. This Court reviews a trial court's findings regarding the best-interest factors under the great-weight-of-the evidence standard, MCL 722.28, and a trial court's custody decision for an abuse of discretion, *McRoberts v Ferguson*, 322 Mich App 125, 133-134; 910 NW2d 721 (2017). A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "A trial court abuses its discretion on a custody matter when its decision is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Zawilanski v Marshall*, 317 Mich App 43, 48; 894 NW2d 141 (2016) (quotation marks and citation omitted).

assessment of the witnesses, including plaintiff and defendant, the trial court found convincing Gottlieb's observation that each parent's personality issues and behavior contributed to the strained relationship between plaintiff and the minor child, but declined to find one party more culpable than the other.

The trial court distinguished the present case from *Martin v Martin*, 331 Mich App 224, 237-238; 952 NW2d 530 (2020), in which the ex-wife actively undermined the ex-husband's relationship with their children, even persuading the children to "distrust any therapist who did not adopt their viewpoints wholesale" and encouraging the children to spy for her during the ex-husband's extended parenting time. Although the trial court in the present case declined to label this a case of parental alienation, the court recognized that plaintiff's relationship with the child was strained and needed repair. The court took measures to allow plaintiff to begin to reconnect with the child and signaled its willingness to order therapeutic and coparenting counseling if necessary.

This Court typically gives due deference to a trial court's credibility determination. MCR 2.613(C); *Berger v Berger*, 277 Mich App 700, 711; 747 NW2d 336 (2008). In addition, we recognize that the weight to be given an expert witness's testimony, and the decision regarding which expert to believe, is for the trier of fact to decide. See *Guerrero v Smith*, 280 Mich App 647, 669; 761 NW2d 723 (2008). Plaintiff's arguments have not overcome the deference due the fact-finder as to these matters.

For these reasons, the trial court's finding that this was not a case of parental alienation was not against the great weight of the evidence.

## B. BEST-INTERESTS ANALYSIS

Plaintiff next argues that the trial court committed clear legal error by adopting as its own ruling certain paragraphs of defendant's pretrial brief. We conclude that the trial court erred in the method it used when it adopted certain of defendant's best-interest analyses.

Above all other considerations, trial courts must resolve custody disputes by determining what is in the child's best interests, as measured by the factors in MCL 722.23. See *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). A child's best interests means the "sum total" of all the factors stated under MCL 722.23. The trial court must consider each factor and explicitly state its findings and conclusions regarding the factor. See *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007); *Foskett v Foskett*, 247 Mich App 1, 9; 634 NW2d 363 (2001). However, the court need not comment on every matter in evidence or declare whether it accepted or rejected every proposition argued. See *Baker v Baker*, 411 Mich 567, 583; 309 NW2d 532 (1981). The record need only be sufficient for an appellate court to determine whether the evidence clearly preponderates against the trial court's findings. See *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). "[A] trial court's findings on each factor should be affirmed unless the evidence clearly preponderates in the opposite direction." *Kubicki v Sharpe*, 306 Mich App 525, 542; 858 NW2d 57 (2014).

In the present case, the trial court clearly erred by not making or adopting explicit and reviewable findings of fact about each of the best-interest factors. The trial court stated that it was

adopting the "law," "logic," and "rationale" of certain of defendant's best-interest analyses. If, by this, the trial court meant that it was adopting some of defendant's conclusions regarding whom certain factors favored, it is clear that the trial court erred by not making explicit and reviewable findings of fact about each of the best-interest factors. If the trial court meant to adopt the facts in the identified best-interest analyses, the trial court erred by adopting paragraphs of defendant's pretrial brief wholesale, without explicitly identifying the assertions that it was adopting as factual findings. Defendant's pretrial brief contained a multitude of arguments and assertions regarding the best-interest factors, including what the evidence at trial would show regarding disputed factual questions. Thus, by wholesale adopting defendant's pretrial brief, the trial court left it to this Court to identify which assertions in the identified best-interest analyses were addressed at trial, to assume that those were the assertions the trial court was adopting as its findings of fact, and then to determine whether to affirm those findings, all while making assumptions about the trial court's credibility determinations and weighing of the evidence. Adopting wholesale, without further comment, a party's best-interest analysis in a pretrial brief does not satisfy a trial court's obligation to "consider and explicitly state its findings and conclusions with respect to each of [the best-interest] factors." *Foskett*, 247 Mich App at 9. The trial court's findings need not be extensive or exhaustive. See *id*. at 12. But there should be definite, explicit findings identifiable as the trial court's findings and reviewable by this Court. See *Rittershaus*, 273 Mich App at 475. In this case, the trial court's way of addressing the best-interest factors did not meet this standard and was insufficient to facilitate appellate review.

For these reasons, we reverse the trial court's physical custody determination and remand for a new child custody hearing. See *Foskett*, 247 Mich App at 12. On remand, the trial court should consider up-to-date information, "including the [child's] current and reasonable preferences . . . ." *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994).

### III. ATTORNEY FEES

Plaintiff next contends that the trial court abused its discretion by not considering her request for attorney fees under MCR 3.206(D)(2)(b). We agree.[2]

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). MCR 3.206(D)(2)(b) authorizes an award of attorney fees in domestic relations cases when the requesting party alleges facts sufficient to show that "the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply." When considering whether to award attorney fees on the basis that a party violated a court order, the trial court should

---

[2] We review for an abuse of discretion a trial court's decision whether to award attorney fees in a divorce action. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). We review the findings underlying the trial court's decision for clear error. *Reed*, 265 Mich App at 164. A finding is clearly erroneous if this Court is "left with a definite and firm conviction that a mistake has been made." *Colen v Colen*, 331 Mich App 295, 300; 952 NW2d 558 (2020).

determine whether a party violated a court order, whether this misconduct caused the party to incur fees, and whether those fees were reasonable. See *Reed*, 265 Mich App at 165-166.

In the present case, the trial court ordered the parties to pay their own attorney fees. The trial court indicated that plaintiff had "over litigated" the parent-alienation issue, but the court did not expressly evaluate plaintiff's request for attorney fees under MCR 3.206(D)(2)(b). A trial court can abuse its discretion by failing to exercise that discretion. See *Komejan v Suburban Softball, Inc*, 179 Mich App 41, 49; 445 NW2d 186 (1989). Such is the case here. The trial court may have considered plaintiff's request and impliedly denied it. However, the trial court's failure to address the matter on the record leaves this Court unable to meaningfully review the decision. As we are remanding for a new custody hearing, we also remand on the issue whether plaintiff was entitled to attorney fees under MCR 3.206(D)(2)(b).

## IV. REMAND TO A DIFFERENT JUDGE

Plaintiff requests that we remand the case to different judge. We conclude that remand to a different judge is not warranted.

When determining whether to remand to a different judge, this Court may consider whether: (1) the original judge would have difficulty discarding previously expressed views or findings; (2) reassignment is advisable to preserve the appearance of justice, and (3) reassignment would not entail excessive waste. *Bayati v Bayati*, 264 Mich App 595, 602-603; 691 NW2d 812 (2004).

We conclude that none of the foregoing circumstances are present in the instant case. Plaintiff has not shown that the trial judge's rejection of her theory of parental alienation requiring immediate intervention was the product of the trial court's preexisting opinion about the case rather than a determination made on the basis of evidence adduced at trial and the proper exercise of the trial court's obligations as fact-finder. There also is no indication of deep-seated antagonism or favoritism that would suggest the trial judge could not put aside previous findings or views such that reassignment to a new judge on remand would be warranted. See *id*. at 602. In addition, the trial judge is familiar with the parties and with the details of this lengthy, procedurally odd, and highly acrimonious case. Reassignment would likely involve an excessive waste of the time and resources required for a newly-assigned judge to become familiar with the case, not to mention the prolongation of uncertainty for the minor child. See *id*. For these reasons, we conclude that remand to a different judge is not warranted.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Douglas B. Shapiro
/s/ Christopher P. Yates